## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

REED AUTO OF OVERLAND                  )
PARK, LLC, d/b/a Reed Jeep Chrysler    )
Dodge Ram; and                         )
                                       )
REED AUTOMOTIVE GROUP, INC.,           )
                                       )
        Plaintiffs,                    )
                                       )
vs.                                    )        Case No.: 2:19-cv-02510-HLT
                                       )
LANDERS MCLARTY OLATHE                 )
KS, LLC, d/b/a Olathe Dodge Chrysler   )
Jeep Ram,                              )
                                       )
        Defendant.                     )

## PLAINTIFFS' RESPONSE TO DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT


Dated: February 5, 2021              POLSINELLI PC


                                      _/s/ Todd H. Bartels_____
                                     Todd H. Bartels                KS #18148
                                     tbartels@polsinelli.com
                                     Phillip J.R. Zeeck         D. Kan. #78493
                                     pzeeck@polsinelli.com
                                     E. Benton Keatley          D. Kan. #78780
                                     ebkeatley@polsinelli.com
                                     R. Dan Boulware      MO #24289 (*pro hac vice*)
                                     dboulware@polsinelli.com
                                     900 W. 48th Place, Suite 900
                                     Kansas City, MO 64112
                                     Phone: (816) 753-1000
                                     Fax: (816) 753-1536

                                     ATTORNEYS FOR PLAINTIFFS REED AUTO
                                     OF OVERLAND PARK, LLC AND REED
                                     AUTOMOTIVE GROUP, INC.

# TABLE OF CONTENTS

**Page**

1.  Introduction ................................................................................................ 9

2.  Disputed Material Facts ............................................................................. 9

     A.  Disputed Material Facts ...................................................................... 9

     B.  Additional Material Facts .................................................................. 13

3.  Legal Standard .......................................................................................... 16

4.  Arguments and Authorities ...................................................................... 16

     A.  Landers McLarty's illegality defense fails on procedure and substance. ............. 17

          (1)  Landers McLarty waived its illegality defense by failing to raise it at any time before summary judgment ...................................................... 17

          (2)  Landers McLarty offered no explanation for failing to raise illegality as a defense, and this Court should therefore deny any constructive request for leave to amend. ....................................................................... 19

          (3)  Landers McLarty's illegality defense fails substantively because a dealer's promise not to protest a competing dealer's relocation does not violate any explicit, dominant public interest. .................................... 22

     B.  Landers McLarty cannot show that Plaintiffs lack standing as a matter of law. ................................................................................................... 27

          (1)  Plaintiffs have standing under the Agreement as Overland Park Jeep's successor. .................................................................................. 27

          (2)  Plaintiffs have standing to sue under the Agreement as third-party beneficiaries. .................................................................................... 31

          (3)  Plaintiffs have standing under the Agreement as assignees. .................... 33

          (4)  Landers McLarty can be held liable for breaching the Agreement. ......... 35

     C.  Landers McLarty is not entitled to summary judgment on Plaintiffs' malicious prosecution claim because there is a genuine issue of material fact as to whether it acted without probable cause and with malice in filing the Protest. .............................................................................. 38

     D.  Landers McLarty cannot show that it is entitled to judgment as a matter of law on Plaintiffs' MCPA claim. .................................................. 41

     E.       RAG has viable claims against Landers McLarty. ................................................ 44

5.      Conclusion ...................................................................................................................... 44

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*51382 Gratiot Ave. Holdings, LLC v. Chesterfield Dev. Co., LLC,*
    835 F. Supp. 2d 384 (E.D. Mich. 2011)................................................................19

*Advance-Rumely Thresher Co. v. Jackson,*
    287 U.S. 283 (1932)............................................................................................24, 28

*Ahmad v. Furlong,*
    435 F.3d 1196 (10th Cir. 2006) ...........................................................................21

*Am. Cas. Co. of Reading, Pa. v. Rahn,*
    854 F. Supp. 492 (W.D. Mich. 1994) ...............................................................24, 25

*Ammex, Inc. v. Cox,*
    351 F.3d 697 (6th Cir. 2003) ...............................................................................43

*Arthur Andersen, LLP v. Carlisle,*
    556 U.S. 624 (2009)............................................................................................31

*In re Ault,*
    689 F. App'x 623 (10th Cir. 2017) ......................................................................25

*Bartal v. Brower,*
    993 P.2d 629 (D. Kan. 1999) ...........................................................................40, 41

*Bayview Buick-GMC Truck, Inc. v. Gen. Motors Corp.,*
    597 So.2d 887 (Fla. DCA 1st Dist. 1992).............................................................27

*Bilyeu v. Morgan Stanley Long Term Disability Plan,*
    683 F.3d 1083 (9th Cir. 2012) .............................................................................25

*Bloomfield Estates Improvement Ass'n, Inc. v. City of Birmingham,*
    737 N.W.2d 670 (Mich. 2007)..............................................................................23

*Canaston v. Cathey,*
    976 F.3d 1136 (19th Cir. 2020) ...........................................................................21

*Cannon Twp. v. Rockford Public Schools,*
    875 N.W.2d 242 (Mich. Ct. App. 2015) ...........................................................35, 36

*Carnegie v. Gage Furniture, Inc.,*
    538 P.2d 659 (Kan. 1975).....................................................................................41

*Charter Twp. Of Oshtemo v. Am. Cyanamid Co.*,
   876 F. Supp. 934 (W.D. Mich. 1994) ..............................................................30, 31

*Clear Water Truck Co., Inc. v. M. Bruenger & Co., Inc.*,
   519 P.2d 139 (Kan. 1974) ...........................................................................................38

*Commercial Ins. Co. of Newark, N.J. v. Pacific-Peru Constr. Corp.*,
   558 F.2d 948 (9th Cir. 1977) .....................................................................................33

*Dawson v. Rent-A-Center Inc.*,
   490 F. App'x 727 (6th Cir. 2012) .............................................................................29

*DeFrain v. State Farm Mut. Auto. Ins. Co.*,
   817 N.W.2d 504 (Mich. 2012)...................................................................................24

*Elam v. Aurora Loan Servs., LLC*,
   No. 18-5743, 2019 WL 7603379 (6th Cir. Aug. 9, 2019) ......................................31

*Evoqua Water Techs., LLC v. M.W. Watermark, LLC*,
   940 F.3d 222 (6th Cir. 2019) .............................................................29, 34, 35, 36

*Fed. Maritime Bd. v. Isbrandtsen Co.*,
   356 U.S. 481 (1958)....................................................................................................39

*Fed. Ins. Co. v. Gates Learjet Corp.*,
   823 F.2d 383, 387 (10th Cir. 1987) .........................................................................21

*First Presbyterian Church of Ypsilanti v. H.A. Powell Pipe Organs, Inc.*,
   No. 07-13132, 2010 WL 419972 (E.D. Mich. Feb. 1, 2010)..................................30

*Guardian Depositors Corp. of Detroit v. Brown*,
   287 N.W. 798 (Mich. 1939)................................................................................32, 33

*Hartman v. Great Cent. Ins. Co.*,
   915 F. Supp. 250 (D. Kan. 1996).............................................................................17

*Henry Bierce Co. v. N.L.R.B.*,
   23 F.3d 1101 (6th Cir. 1994) ....................................................................................39

*Herremans v. Carrera Designs, Inc.*,
   157 F.3d 1118 (7th Cir. 1998) ..................................................................................18

*Holick v. Burkhardt*,
   388 F. Supp. 3d 1370 (D. Kan. 2019)................................................................40, 41

*Hunt Constr. Group, Inc. v. Constr. Servs., Inc.*,
   375 F. Supp. 2d 612 (E.D. Mich. 2005)..............................................................23, 25

*Innovation Ventures, LLC v. N2G Distrib., Inc.*,
  779 F. Supp. 2d 671 (E.D. Mich. 2011)...........................................................................42, 43

*Innovation Ventures v. Liquid Mfg.*,
  885 N.W.2d 861 (Mich. 2016)..................................................................................29

*Int'l Bhd. Of Elec. Workers, Local Union Nos. 12, 111, 113, 969 v. Professional
  Hole Drilling, Inc.*,
  574 F.2d 497 (10th Cir. 1978) .................................................................................20

*ISRA Vision, AG v. Burton Indus., Inc.*,
  654 F. Supp. 2d 638 (E.D. Mich. 2009)....................................................................32

*Jachim v. Coussens*,
  278 N.W.2d 708 (Mich. Ct. App. 1979) ..................................................................34

*Jay Chevrolet, Inc. v. Dedvukaj*,
  874 N.W.2d 146 (Mich. Ct. App. 2015) ..................................................................36

*John Labatt Ltd. V. Molson Breweries*,
  853 F. Supp. 965 (E.D. Mich. 1994)..........................................................................42, 43

*Kendzierski v. Macomb Cnty.*,
  931 N.W.2d 604 (Mich. 2019)..................................................................................23

*Las Vegas Ice and Cold Storage Co. v. Far West Bank*,
  893 F.2d 1182 (10th Cir. 1990) ...........................................................................21, 22

*Law Offices of Jeffrey Sherbow, PC v. Fieger & Feiger, PC*,
  930 N.W.2d 416 (Mich. Ct. App. 2019) ..................................................................19

*Lee v. United States*,
  765 F.3d 521 (5th Cir. 2014) ...................................................................................18

*Merrimon v. Unum Life Ins. Co. of Am.*,
  758 F.3d 46 (1st Cir. 2014)......................................................................................25

*Minter v. Prime Equip. Co.*,
  451 F.3d 1196 (10th Cir. 2006) ...............................................................................21

*Morris & Doherty, P.C. v. Lockwood*,
  672 N.W.2d 884 (Mich. Ct. App. 2003) ..................................................................19, 24, 25

*Nummer v. Treasury Dep't*,
  533 N.W.2d 250 (Mich. 1995)..................................................................................39

*Oasis Oil, L.L.C. v. Mich. Props., L.L.C.*,
  Docket No. 306700, 2013 WL 6083715 (Mich. Ct. App. Nov. 19, 2013) ..............24

*Ordos City Hawtai Autobody Co., Ltd. V. Dimond Rigging Co., LLC*,
   695 F. App'x 864 (6th Cir. 2017) ........................................................................20

*People v. Carter*,
   612 N.W.2d 144 (Mich. 2000) ......................................................................23, 25

*Poly-Flex Constr., Inc. v. Neyer, Tiseo & Hondo, Ltd.*,
   600 F. Supp. 2d 897 (W.D. Mich. 2009) ...........................................................36

*In re Receivership of 11910 South Francis Rd.*,
   821 N.W.2d 503 (Mich. 2012) .............................................................................23

*Rory v. Continental Ins. Co.*,
   703 N.W.2d 23 (Mich. 2005) .........................................................................23, 24

*Sampson v. Hunt*,
   665 P.2d 743 (Kan. 1983) ....................................................................................41

*SCO Group, Inc. v. Novell, Inc.*,
   578 F.3d 1201 (10th Cir. 2009) .....................................................................17, 41

*Shutte v. Thompson*,
   82 U.S. 151 (1872) ...............................................................................................23

*Silver Phoenix, LLC v. Trinity Health-Michigan*,
   Case No. 19-13777, 2020 WL 1975179 (E.D. Mich. Apr. 24, 2020) ....................19

*Sky Harbor Air Serv., Inc. v. Reams*,
   491 F. App'x 8745 (10th Cir. 2012) .........................................................19, 21, 22

*Smith v. Globe Life Ins. Co.*,
   597 N.W.2d 28 (Mich. 1999) ..............................................................................42

*Smith v. R.J. Reynolds Tobacco Co.*,
   880 F.3d 1272 (11th Cir. 2018) .....................................................................18, 19

*Stanke v. State Farm Mut. Auto. Ins. Co.*,
   503 N.W.2d 758 (Mich. Ct. Ap. 1993) ...............................................................19

*Steele v. Drummond*,
   275 U.S. 199 (1927).............................................................................................24

*Stillman v. Goldfarb*,
   431 N.W.2d 247 (Mich. Ct. App. 1988) ............................................................26

*Strike Four, LLC v. Nissan N. Am., Inc.*,
   64 A.3d 936, 938 (N.H. 2013) ......................................................................26, 27

*Taggart v. United States*,
 880 F.2d 867 (6th Cir. 1989) ........................................................................34

*Taylor v. DaimlerChrysler AG*,
 237 F. Supp. 2d 789 (E.D. Mich. 2002) ..........................................................32

*Thrifty Oil Co. v. Bank of Am. Nat. Tr. & Sav. Ass'n*,
 322 F.3d 1039 (9th Cir. 2003) ..................................................................37, 38

*Tolan v. Cotton*,
 572 U.S. 650 (2014) ...................................................................................17, 45

*Total Quality, Inc. v. Fewless*,
 No. 346409, 2020 WL 3885083 (Mich. Ct. App. July 9, 2020) .......................29

*Tuscany Grove Ass'n v. Peraino*,
 875 N.W.2d 234 (Mich. Ct. App. 2015) ..........................................................32

*Twin City Pipe Line Co. v. Harding Glass Co.*,
 283 U.S. 353 (1931) ........................................................................................24

*Uber v. Dep't of Natural Resources*,
 No. 211685, 2001 WL 705317 (Mich. Ct. App. Mar. 20, 2001) ......................34

*United States v. Mezzanatto*,
 513 U.S. 196 (1995) ........................................................................................23

*United States v. Wesberry*,
 656 F. App'x 895 (10th Cir. 2016) ..................................................................41

*Wilkes v. Allegan Fruit & Produce Co.*,
 206 N.W. 483 (Mich. 1925) .............................................................................23

*William Beaumont Hosp. v. Wass*,
 889 N.W.2d 745 (Mich. Ct. App. 2016) ..........................................................39

*Wolverine Power Coop v. DEQ*,
 777 N.W.2d 1 (Mich. Ct. App. 2009) ..............................................................28

*Woolsey v. Marion Labs., Inc.*,
 934 F.3d 1452 (10th Cir. 1991) ..................................................................21, 22

*Zapata v. IBP, Inc.*,
 19 F. Supp. 2d 1215 (D. Kan. 1998) ...............................................................17

*Zine v. Chrysler Corp.*,
 600 N.W.2d 385 (Mich. Ct. App. 1999) .....................................................44, 45

**Statutes**

Fla. Stat. Ann. § 320.643(1) ............................................................................................27

K.S.A. 8-2401 ....................................................................................................................25

K.S.A. 8-2402 ....................................................................................................................25

K.S.A. § 8-2414 ................................................................................................................27

K.S.A. 8-2430 ........................................................................................................ 22, 25-27

Mich. Comp. Laws § 445.903(n) ................................................................................43, 44

Mich. Comp. Laws § 445.904(1) ......................................................................................42

Mich. Comp. Laws § 600.1405 ...................................................................................32, 34

U.S. Bankruptcy Code, § 502(b) .......................................................................................38

**Other Authorities**

6 Mich. Civ. Jur. Corporations § 490 (May 2020 Update) ...............................................32

5A Mich. Civ. Jur. Contracts § 17 ....................................................................................33

19 Am. Jur. 2d Corporations § 2282 .................................................................................32

19 C.J.S. Corporations § 899 (June 2020 Update) ...........................................................32

C. Wright & A. Miller, *Federal Prac. And Proc.: Civil* § 1278 (1969) .........................19

*Contract Rights as Commercial Security: Present and Future Intangibles*, 67 Yale
    L.J. 847, 890 (1958) ....................................................................................................33

D. Kan. Rule 56(b)(2) .................................................................................................10, 14

Fed. R. Civ. P. 8(c) ...........................................................................................................19

1.      **Introduction**

Defendant Landers McLarty Olathe KS, LLC ("Landers McLarty") has spent the last 14 years enjoying the benefits of the Settlement Agreement it entered into with Overland Park Jeep, Inc. ("Overland Park Jeep") and DaimlerChrysler Motors Company LLC in 2007 (the "2007 Settlement Agreement" or the "Agreement"). It has also spent the last two years trying unsuccessfully to avoid its obligations under the same contract.

For the first time in its summary judgment motion, Landers McLarty tries a new approach: it argues that the promises it made in the Agreement are unenforceable because they are illegal or against public policy. Landers McLarty does not explain why it did not plead this defense in its Answer, mention it during discovery, or include it in the Pretrial Order. Equally important, it does not identify any express, dominant public policy that the Agreement violates. Its new defense is therefore a nonstarter.

Landers McLarty's other arguments fail likewise. It cannot show that Plaintiffs lack standing. It cannot show any right to judgment as a matter of law on Plaintiffs Michigan Consumer Protection Act ("MCPA") or malicious prosecution claims. And it cannot show any legal authority to support barring Plaintiff Reed Automotive Group, Inc. ("RAG") from relief. Landers McLarty's motion therefore fails entirely, and this Court should deny it.

2.      **Disputed Material Facts**

Under D. Kan. Rule 56.1(b)(1), Plaintiffs identify the following disputed and additional material facts affecting this Court's summary judgment analysis.[1]

A.      **Disputed Material Facts**

The parties dispute the following material facts.

---

[1] Under Rule 56.1 facts admitted herein are admitted "for the purpose of summary judgment" only, and Plaintiffs reserve the right to contest such facts at trial.

1.     The Asset Purchase Agreement between Overland Park Ventures and RAG (the "APA") is a legal instrument that speaks for itself, and Plaintiffs dispute Landers McLarty's paraphrasing its contents in the Statement of Uncontroverted Facts section (the "SOF") of Landers McLarty's summary judgment brief. In particular:

a.     APA section 1.2 states that RAG "will assume and agree to pay, perform, and discharge, promptly when due <u>only</u> those liabilities, obligations, and duties of [Overland Park Ventures] arising on or after the Closing Date with respect to the Assumed Contracts."[2] Landers McLarty incorrectly summarizes this section in SOF ¶ 23, specifically by omitting that RAG agreed to assume Overland Park Ventures' liabilities "arising on or after the Closing Date," except as specifically otherwise excluded.

b.     APA section 1.2 also states that RAG will, "[i]n no event . . . assume or incur any liability or obligation under this Section or otherwise in respect of any liabilities other than the Assumed Liabilities."[3] Landers McLarty incorrectly summarizes this section in SOF ¶ 25, in particular by omitting that section 1.2 does not place any limits on contractual benefits, as opposed to liabilities, to which it is entitled under the APA. Overland Park Ventures' obligations under the 2007 Settlement Agreement had already been performed before the APA closed.

c.     As Landers McLarty points out in SOF ¶ 28, APA schedule 6.7 states that "Liabilities under all agreements other than 'Assumed Contracts' are considered Excluded Liabilities." But, as explained above, Landers McLarty fails to state that this section does not place any limits on contractual benefits. Landers McLarty also fails to state that APA section 6.7 states that APA schedule 6.7 "sets forth a list of all currently

---

[2] APA p. 4-5 (ReedAuto_001116-17). The APA is attached as **Exhibit A**.
[3] *Id.* at 5 (ReedAuto_001117).

existing contracts and agreements relating to [Overland Park Ventures or its] business which are <u>not</u> being assumed by [RAG] and which are considered Excluded Liabilities."[4] The 2007 Settlement Agreement does not appear on that list.

2.     Plaintiffs dispute Landers McLarty's professed beliefs when it filed the Notice of Protest, summarized at SOF ¶ 39(a)-(y). In particular:

a.   Landers McLarty's professed beliefs fail to account for an email Landers McLarty's member and general manager, Kevin Lawyer, sent on April 10, 2019—16 days before Landers McLarty filed the Notice of Protest—in which Mr. Lawyer states that Landers McLarty should file the Protest to "cripple" Reed Auto's business.[5] Mr. Lawyer's email is the only indication of Landers McLarty's intent the parties have produced that was created around the time Landers McLarty filed the Notice of Protest.

b.   Landers McLarty immediately dismissed its Protest when it learned that Plaintiffs had obtained a copy of the Agreement.[6] This contradicts its assertions in SOF ¶ 39—if Landers McLarty actually believed it had a right to proceed with the Protest despite the Agreement, it would have done so.

As such, Landers McLarty's professed beliefs set forth in SOF ¶ 39 and its subparagraphs appear to be a *post hoc* attempt to justify its improper conduct.

3.     The Assignment of Agreement between Overland Park Ventures and RAG (the "OPV Assignment") is a legal instrument that speaks for itself, and Plaintiffs dispute Landers McLarty's paraphrasing of its contents in SOF ¶ 41. The OPV Assignment states that Overland

---

[4] *Id.* at 21 (ReedAuto_001133) (emphasis in original).

[5] Apr. 10, 2019 Email from K. Lawyer p. 1 (LM001709). Mr. Lawyer's April 10, 2019 email is attached as **Exhibit B**; *cf.* Dkt. 78 (Motion) at 12 (SOF ¶ 39(r)) (asserting that Landers McLarty believed that "[t]he denial of the relocation application would likely not have any detrimental impact on" Reed Auto).

[6] *See* Dkt. 78 (Motion) at 12 (SOF ¶ 39(y)).

Park Ventures "entered into the [2007 Settlement Agreement] in full reliance that [Overland Park Ventures], or its successors and/or assigns, could relocate the . . . dealership" without protest, and that that Agreement was intended to be included as an Assigned Contract under the APA.[7] It also states that Overland Park Ventures "assigns, releases, remises, quit claims and sets over all of its rights, titles, interests, and benefits of and to the [2007 Settlement Agreement] to [RAG] as of [February 1, 2018]."[8] Landers McLarty's summary failed to state Overland Park Ventures' statements of intent or the OPV Assignment's effective date.

4.      The Assignment of Agreement between RAG and Reed Auto (the "RAG Assignment") is a legal instrument that speaks for itself, and Plaintiffs dispute Landers McLarty's paraphrasing of its contents in SOF ¶¶ 42-43. The RAG Assignment states that RAG "assigns to Reed Auto all rights, titles, interests and benefits of and to the [2007] Settlement Agreement" effective February 1, 2018.[9] Landers McLarty's summary failed to state the RAG Assignment's effective date.

5.      Plaintiffs dispute Landers McLarty's assertion that "[a]ll bills for attorney fees and expense[s] have been paid by Plaintiff RAG and not by" Reed Auto as set forth in SOF ¶ 46. RAG has paid invoices for attorney fees to date, but it has invoiced Reed Auto for reimbursement on each of those invoices.[10]

6.      Plaintiffs dispute Landers McLarty's assertion that the "only facts [Plaintiffs] relied on" in asserting damages "is that Landers McLarty filed its Notice of Protest" as set forth in SOF ¶ 47. Plaintiffs Complaint expressly states that it also seeks damages for Landers

---

[7] OPV Assignment p. 1-2 (ReedAuto_002834-35). The OPV Assignment is attached as **Exhibit C**.

[8] *Id.* at 2 (ReedAuto_002835).

[9] RAG Assignment p. 1 (ReedAuto_002838). The RAG Assignment is attached as **Exhibit D**.

[10] *See* Invoice (ReedAuto_005480). The invoice is attached as **Exhibit E**.

McLarty's "non-disclosure of the [2007 Settlement Agreement] to Plaintiffs, FCA, and the Kansas Department of Revenue [as a] manifestation of bad faith [and] unfair competition."[11]

7.      Under the APA, Plaintiffs were vested with rights and liabilities previously held by Overland Park Ventures.[12] Although Landers McLarty does not assert anything to the contrary in its SOF, it does assert in arguing its brief that "Plaintiffs are not the successors of [Overland Park Ventures] when they are not vested with rights and did not assume liabilities of [Overland Park Ventures]."[13] As the APA shows, Plaintiffs were vested with many of Overland Park Ventures' rights and liabilities when they acquired Overland Park Ventures' assets.

### B.      Additional Material Facts

Under D. Kan. Rule 56(b)(2), Plaintiffs assert the following additional undisputed material facts affecting this Court's summary judgment analysis.

1.      By closing on the APA, Reed Auto acquired Overland Park Ventures' liabilities and obligations necessary for the uninterrupted continuation of normal business operations, including the service contracts, lease agreement, and other agreements necessary for operating a car dealership in the same manner as Overland Park Ventures had done.[14]

2.      After the APA closed, Reed Auto continued to operate a car dealership at 8775 Metcalf Avenue selling Chrysler, Dodge, and Jeep vehicle lines.[15]

---

[11] Dkt. 1 (Complaint) ¶ 69.

[12] *See* Ex. A (APA) at 1-4 (ReedAuto_001113-16) (identifying the principal assets and rights Plaintiffs acquired under the APA); *see also id.* at 4-6 (ReedAuto_001116-18) (identifying the principle liabilities Plaintiffs acquired under the APA).

[13] Dkt. 78 (Motion) at 27.

[14] *See* Ex. A (APA) at 1 (ReedAuto_001113) (the APA's purpose is for Reed Auto "to acquire substantially all of the assets" of Overland Park Ventures "for the purpose of succeeding [Overland Park Ventures] as the authorized Chrysler, Jeep, Dodge, and Ram dealer at the Dealership Location"); *see also* Reed Dep. Tr. at 105:17-106:1, 204:3-6. Excerpts of Randy Reed's deposition transcript are attached as **Exhibit F**.

[15] Ex. F (Reed Dep. Tr.) at 202:4-23.

3.      After the APA closed, Reed Auto retained all of Overland Park Ventures'
personnel except for one employee, including the dealership's day-to-day management
personnel.[16]

4.      After the APA closed, Reed Auto continued using the same assets Overland Park
Ventures used to operate its dealerships, including its inventory.[17]

5.      After the APA closed, Reed Auto continued Overland Park Ventures' general
business operations.[18]

6.      After Plaintiffs filed this action, Landers McLarty did not assert illegality or
public policy as an affirmative defense in its Answer to Plaintiffs' Complaint.[19]

7.      Landers McLarty did not move at any time for leave to add illegality or public
policy as an affirmative defense.[20]

8.      Landers McLarty did not identify illegality or public policy as a possible defense
in its responses to Plaintiffs' interrogatories.[21]

9.      In responding to Plaintiffs interrogatories, Landers McLarty withdrew several
affirmative defenses asserted in its Answer, including estoppel, laches, unclean hands, and
"failure to act reasonably."[22]

---

[16] *Id*. at 201:9-22.

[17] *Id.* at 202:24-203:7.

[18] *Id.* at 202:4-23, 204:3-6.

[19] *See* Dkt. 8 (Answer) p. 11-13.

[20] *See* Docket Sheet. The docket sheet for this action is attached as **Exhibit G**.

[21] *See generally* Defendant's Responses to Plaintiffs' Interrogatories. These Responses are attached as **Exhibit H**. Landers McLarty did state in its Answer that "Plaintiffs' Complaint is barred . . . by lack of offer, acceptance, consideration, and meeting of the minds" and "by the lack of a contract." Dkt. 8 (Answer) at 12. When Plaintiffs asked Landers McLarty to explain why it believed "that the Agreement lacks offer, acceptance, consideration, and meeting of the minds" or "is not a contract," Landers McLarty stated that their defenses did "not provide that the Agreement lacks" these essentials. Ex. H (Responses to Interrogatories) at 12-13.

[22] *See id.* at 11.

10.     Landers McLarty did not identify illegality or public policy as a possible defense in its responses to Plaintiffs' requests for production.[23]

11.     Landers McLarty did not identify illegality or public policy as a possible defense in its responses to Plaintiffs' requests for admission.[24]

12.     During discovery generally, Landers McLarty suggested that it would pursue various other defenses not identified elsewhere, including that (1) Reed Auto's relocation site was not within the Overland Park Sales Area identified in the Agreement[25]; (2) Landers McLarty did not understand its obligations under the Agreement because it did not possess a complete copy of the Agreement[26]; (3) Dodge, Chrysler, Jeep, and Ram are not DaimlerChrysler vehicle lines[27]; and (4) attorney fees are not damages.[28]

13.     Landers McLarty did not identify illegality or public policy as a possible defense in the Pretrial Order.[29]

14.     In moving for summary judgment, Landers McLarty did not explain its failure to identify illegality or public policy as a defense prior to summary judgment.[30]

15.     Despite its present assertion that the Agreement's no-protest promise violated Kansas statute *ab initio*, its corporate representative, Chuck Cummings, and its member and

---

[23] *See generally* Defendant's Responses to Plaintiffs' Requests for Production of Documents. These Responses are attached as **Exhibit I**.

[24] *See generally* Defendant's Responses to Plaintiffs' Requests for Admission. These Responses are attached as **Exhibit J**.

[25] *Id.* at 4.

[26] *Id.* at 5.

[27] Ex. H (Responses to Interrogatories) at 7-9.

[28] *Id.* at 11.

[29] *See* Dkt. 75 (Pretrial Or.).

[30] *See* Dkt. 78 (Motion) at 16-21.

general manager, Kevin Lawyer, both testified that Overland Park Ventures' assignment of its rights under the Agreement to Plaintiffs "made [the Agreement] legal."[31]

### 3.     Legal Standard

"Summary judgment is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."[32] "[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[33] Thus, in analyzing a motion for summary judgment, "a court must view the evidence in the light most favorable to the opposing party."[34] It must not "act as the jury and determine witness credibility, weigh the evidence, or choose between competing inferences."[35]

"Trial courts should act with caution in granting summary judgment, and may deny summary judgment where there is reason to believe that the better course would be to proceed to trial."[36] "If the evidence presented on a dispositive issue is subject to conflicting, reasonable interpretations, summary judgment is improper."[37]

### 4.     Arguments and Authorities

Landers McLarty's disparate and desperate arguments fail to show that it is entitled to judgment as a matter of law on any issue in this case. Its newly-asserted illegality defense fails on procedure and substance, it cannot show that Plaintiffs lack standing, and it cannot support

---

[31] Cummings Dep. Tr. p. 77:5-13. Excerpts from Chuck Cummings's deposition transcript are attached as **Exhibit K**. *See also* Lawyer Dep. Tr. p. 132:20-133:4. Excerpts from Kevin Lawyer's deposition transcript are attached as **Exhibit L**.

[32] *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (internal quotation marks omitted).

[33] *Id.* (internal quotation marks omitted).

[34] *Id.* (internal quotation marks omitted).

[35] *Hartman v. Great Cent. Ins. Co.*, 915 F. Supp. 250, 252 (D. Kan. 1996).

[36] *Zapata v. IBP, Inc.*, 19 F. Supp. 2d 1215, 1222 (D. Kan. 1998).

[37] *SCO Group, Inc. v. Novell, Inc.*, 578 F.3d 1201, 1218 (10th Cir. 2009).

any argument for rejecting Plaintiffs' MCPA claim, Plaintiffs' malicious prosecution claims, or RAG's right to recovery. Its motion therefore fails entirely.

### A.       Landers McLarty's illegality defense fails on procedure and substance.

Landers McLarty argues for the first time in its summary judgment motion that this Court cannot enforce its no-protest promise because the promise is illegal or void as against public policy. This new argument comes 14 years after Landers McLarty made the promise in exchange for valuable consideration—competing dealers immediately dropping their protests trying to block Landers McLarty's relocation. The new argument also comes over 17 months after this case began, even though Landers McLarty has had all facts necessary to assert the defense for over a decade. Even at this late date, Landers McLarty has not pleaded illegality as a defense, explained its failure to do so, or identified a Kansas statute specifically forbidding agreements to waive protest rights under Kansas's dealership laws. The defense therefore fails.

### (1)       Landers McLarty waived its illegality defense by failing to raise it at any time before summary judgment.

"'In diversity of citizenship actions, state law defines the nature of defenses, but the Federal Rules of Civil Procedure provide the manner and time in which defenses are raised and when waiver occurs.'"[38] In this case, therefore, Michigan law controls whether illegality is an

---

[38] *Smith v. R.J. Reynolds Tobacco Co.*, 880 F.3d 1272, 1280-81 (11th Cir. 2018) (quoting *Morgan Guar. Trust Co. of N.Y. v. Blum*, 649 F.2d 342, 344 (5th Cir. Unit B 1981); *see also Lee v. United States*, 765 F.3d 521, 523 (5th Cir. 2014) ("the Federal Rules of Civil Procedure . . . govern the manner and time in which defenses are raised and when waiver occurs."); *Herremans v. Carrera Designs, Inc.*, 157 F.3d 1118, 1122-23 (7th Cir. 1998) (a party forfeits a defense under federal rules, which govern procedure in "federal litigation even when the basis of federal jurisdiction is diversity of citizenship.").

affirmative defense,[39] and federal law controls when Landers McLarty was required to assert it and when waiver occurred.[40]

Under Michigan law, "[a]n affirmative defense is a defense that does not controvert the plaintiff's establishing a prima facie case, but that otherwise denies relief to the plaintiff."[41]

> In other words, it is a matter that accepts the plaintiff's allegation as true and even admits the establishment of the plaintiff's prima facie case, but denies that the plaintiff is entitled to recover on the claim for some reason not disclosed in the plaintiff's pleadings.[42]

Under Michigan's court rules, any assertion that a contract is illegal or void as contrary to public policy is an affirmative defense.[43]

It is nearly universally accepted "by the federal courts that a failure to plead an affirmative defense as required by Federal Rule 8(c) results in the waiver of that defense and its exclusion from the case."[44] The Tenth Circuit has specifically identified "[t]he illegality of a contract [as] a defense that 'a party must affirmatively state' in a pleading."[45] As a result, "the

---

[39] *See* 2007 Settlement Agreement p. 3 (ReedAuto_000063) (stating that Michigan law controls disputes arising under the 2007 Settlement Agreement). The 2007 Settlement Agreement is attached as **Exhibit M**.

[40] *Smith*, 880 F.3d at 1280-81.

[41] *Stanke v. State Farm Mut. Auto. Ins. Co.*, 503 N.W.2d 758, 760 (Mich. Ct. Ap. 1993).

[42] *Id.*

[43] *Law Offices of Jeffrey Sherbow, PC v. Fieger & Feiger, PC*, 930 N.W.2d 416, 429 (Mich. Ct. App. 2019); *see also Silver Phoenix, LLC v. Trinity Health-Michigan*, Case No. 19-13777, 2020 WL 1975179, *2 (E.D. Mich. Apr. 24, 2020) (Michigan's "court rules identify illegality as an affirmative defense."). Under Michigan law, illegality and public policy are treated coextensively when asserted as affirmative defenses. *See, e.g., 51382 Gratiot Ave. Holdings, LLC v. Chesterfield Dev. Co., LLC*, 835 F. Supp. 2d 384, 401 (E.D. Mich. 2011) (a contract "contrary to public policy is illegal and void."); *Morris & Doherty, P.C. v. Lockwood*, 672 N.W.2d 884, 893 (Mich. Ct. App. 2003) (in order for a contract to be void for violating public policy, it must contradict language "clearly apparent in . . . constitutions . . . statutes, and the common law.").

[44] C. Wright & A. Miller, *Federal Prac. And Proc.: Civil* § 1278 (1969).

[45] *Sky Harbor Air Serv., Inc. v. Reams*, 491 F. App'x 8745, 883 (10th Cir. 2012) (quoting Fed. R. Civ. P. 8(c)(1).

affirmative defense of illegality is waived if not pleaded."[46] Federal courts have applied this principle to bar a defendant from asserting Michigan law's illegality defense in particular.[47]

Here, Landers McLarty pleaded 14 separate affirmative defenses in its Answer, but it did not plead that its promise not to protest a competitor's relocation was illegal or against public policy.[48] Landers McLarty did not amend its Answer to include illegality or public policy as a defense, nor did it ask the Court for leave to do so. It did not raise illegality or public policy in any written discovery,[49] deposition, or motion filed in this action. And it did not mention it in any way in the Pretrial Order that the parties prepared.[50] Landers McLarty has not identified, referenced, developed, or explained its illegality defense at any time during this case, and that failure waives the defense.[51]

> **(2)    Landers McLarty offered no explanation for failing to raise illegality as a defense, and this Court should therefore deny any constructive request for leave to amend.**

The Tenth Circuit has held that, in limited circumstances, a district court may allow a party that failed to amend its answer under Rule 15 to "constructively amend its answer . . . by

---

[46] *Int'l Bhd. Of Elec. Workers, Local Union Nos. 12, 111, 113, 969 v. Professional Hole Drilling, Inc.*, 574 F.2d 497, 500 (10th Cir. 1978).

[47] *See Ordos City Hawtai Autobody Co., Ltd. V. Dimond Rigging Co., LLC*, 695 F. App'x 864, 872-73 (6th Cir. 2017) (barring an illegality defense where the party asserting it failed to raise it before summary judgment).

[48] *See* Dkt. 8 (Answer) at 11-13.

[49] *See* Exs. H (Responses to Interrogatories), I (Responses to Requests for Production), J (Responses to Requests for Admission).

[50] *See* Dkt. 75 (Pretrial Or.).

[51] *Ordos City Hawtai Autobody*, 695 F. App'x at 872-73 (a party waives Michigan law's illegality defense by failing to raise it before summary judgment); *Int'l Bhd. Of Elec. Workers*, 574 F.2d at 500 (illegality is waived if not pleaded).

raising an affirmative defense in a motion for summary judgment."[52] But any attempt to amend an answer constructively must still meet Rule 15's requirements for amending pleadings.[53]

Leave to amend—constructive or otherwise—is denied when the party seeking leave only does so after undue delay.[54] Although "[s]ome circuits hold that an amendment may be denied for undue delay only if the trial court finds prejudice, bad faith, futility, or (in some circuits) a substantial burden on the court," the Tenth Circuit Court of Appeals focuses "primarily on the reasons for the delay."[55] It has held repeatedly that, when a party seeking leave to amend fails to offer any reason for delaying, "[t]his unexplained delay alone justifies" denying leave.[56] Denying leave is especially appropriate where the moving party "was aware of the facts on which the amendment was based for some time prior"[57] to seeking leave, waits "to seek amendment until more than fourteen months" after litigation begins,[58] or uses the proposed amendment "to make a pleading a 'moving target' or 'to salvage a lost case by untimely suggestion of new theories.'"[59]

Here, Landers McLarty cannot satisfy Rule 15's requirements for obtaining leave to amend its Answer. Kansas's dealership statute, on which the defense is based, has not changed

---

[52] *Sky Harbor Air Services*, 491 F. App'x at 884 (internal quotation marks omitted).

[53] *Ahmad v. Furlong*, 435 F.3d 1196, 1202 (10th Cir. 2006).

[54] *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 (10th Cir. 2006); *Sky Harbor Air Services*, 491 F. App'x at 884.

[55] *Id.*

[56] *Id.* (citing *Frank v. U.S. West*, 3 F.3d 1357, 1367-66 (10th Cir. 1993); *Durham v. Xerox Corp.*, F.3d 836, 840 (10th Cir. 1994); *Fed. Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387 (10th Cir. 1987)).

[57] *Federal Insurance*, 823 F.3d at 840; *see also Woolsey v. Marion Labs., Inc.*, 934 F.3d 1452, 1462 (10th Cir. 1991) (denying leave when "no new evidence that was unavailable at the original filing" had been discovered); *Las Vegas Ice and Cold Storage Co. v. Far West Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990) ("Where a party seeking amendment knows or should have known of the facts upon which the proposed amendment is based . . .  the motion [to amend] is subject to denial.").

[58] *Canaston v. Cathey*, 976 F.3d 1136, 1145 (19th Cir. 2020).

[59] *Sky Harbor Air Services*, 491 F. App'x at 884 (quoting *Minter*, 451 F.3d at 1206).

since Landers McLarty made its no-protest promise fourteen years ago,[60] nor have any facts that would affect Landers McLarty's right to assert an illegality defense. Landers McLarty therefore "was aware of the facts" necessary for asserting that defense for over a decade.[61] But it never asserted the defense after Plaintiffs discovered the Agreement during the Protest, and it failed to raise the defense for more than seventeen months after this case began. In the meantime, it pleaded fourteen affirmative defenses, withdrew several of those defenses—including estoppel,[62] laches,[63] unclean hands,[64] and "failure to act reasonably"[65]—and suggested that it would pursue various other defenses not identified in its Answer, including that (1) Reed Auto's relocation site was not within the Overland Park Sales Area identified in the Agreement[66]; (2) Landers McLarty did not understand its obligations under the Agreement because it did not possess a complete copy of the Agreement[67]; (3) Dodge, Chrysler, Jeep, and Ram are not DaimlerChrysler vehicle lines[68]; and (4) attorney fees are not damages.[69] Landers McLarty's last-ditch assertion of illegality is therefore exactly the kind of "moving target" that is incompatible with the Federal Rules of Civil Procedure.[70] This Court should reject it.

---

[60] *See* K.S.A. § 8-2430 (1994).

[61] *Federal Insurance*, 823 F.3d at 840; *Woolsey*, 934 F.3d at 1462; *Las Vegas Ice*, 893 F.2d at 1185.

[62] *Id.*

[63] *Id.*

[64] *Id.*

[65] Ex. H (Responses to Interrogatories) at 11.

[66] Ex. J (Responses to Requests for Admission) at 5-6.

[67] *Id.* at 7.

[68] Ex. H (Responses to Interrogatories) at 6.

[69] *Id.* at 11.

[70] *See Sky Harbor Air Services*, 491 F. App'x at 884.

  **(3) Landers McLarty's illegality defense fails substantively because a dealer's promise not to protest a competing dealer's relocation does not violate any explicit, dominant public interest.**

  Landers McLarty's illegality defense also fails because it did not contract to do anything violating an explicit, dominant public interest. "Parties have great freedom to choose to contract with each other, to choose not to do so, or to choose an intermediate course that binds them in some ways and leaves each free in other ways."[71] An "ancient and irrefutable" element of this freedom is that "courts will enforce [the] agreements" parties make.[72] In other words, "[c]ourts enforce contracts according to their unambiguous terms *because* doing so respects the freedom of individuals freely to arrange their affairs via contract."[73]

  The Michigan Supreme Court has specifically and repeatedly held that the freedom of contract includes the freedom to waive statutory rights.[74] Federal courts have specifically and repeatedly held likewise.[75] As a result, Michigan courts and federal courts applying Michigan law enforce agreements to waive statutory rights.[76]

---

[71] *Bloomfield Estates Improvement Ass'n, Inc. v. City of Birmingham*, 737 N.W.2d 670, 674 (Mich. 2007) (internal quotation marks omitted).

[72] *Rory v. Continental Ins. Co.*, 703 N.W.2d 23, 31 (Mich. 2005) (internal quotation marks omitted).

[73] *Kendzierski v. Macomb Cnty.*, 931 N.W.2d 604, 612 (Mich. 2019) (emphasis added).

[74] *In re Receivership of 11910 South Francis Rd.*, 821 N.W.2d 503, 514 (Mich. 2012) ("Certainly, a party can waive its statutory rights."); *People v. Carter*, 612 N.W.2d 144, 150 (Mich. 2000) ("It is presumed that waiver is available in a broad array of constitutional and statutory provisions."); *Wilkes v. Allegan Fruit & Produce Co.*, 206 N.W. 483, 484 (Mich. 1925) ("a contract may waive constitutional or statutory rights or may change an established rule of law.")

[75] *United States v. Mezzanatto*, 513 U.S. 196, 204 (1995) (legal rights generally and statutory rights in particular "are subject to waiver by voluntary agreement of the parties."); *Shutte v. Thompson*, 82 U.S. 151, 159 (1872) ("A party may waive any provision, either of a contract or of a statute, intended for his benefit.");

[76] *See, e.g., Hunt Constr. Group, Inc. v. Constr. Servs., Inc.*, 375 F. Supp. 2d 612, 616 (E.D. Mich. 2005) ("Michigan law permits a party to waive a specific right through a contract"); *Rory*, 703 N.W.2d at 31 (an agreement to shorten a statutory limitations period "is to be enforced as written").

In some "highly unusual circumstance[s]," a contract that violates "law or public policy" may be void.[77] But this "principle must be cautiously applied to guard against confusion and injustice."[78] "The circumstances under which a contract provision can be said to violate law or public policy are . . . narrow."[79] A court "must proceed with caution in determining what exactly constitutes  . . . public policy."[80] Public policy "must be clearly apparent" in statutes or other authorities.[81] Especially when a party receives the benefit of a contract and then tries to "avoid [its] own promise" by asserting that the contract is illegal, a court should permit it to do so "only where enforcement conflicts with *dominant* public interests."[82] In sum, invalidating "a contract provision on policy grounds is limited to a situation where it violates a well defined, dominant, explicit public policy."[83]

Here, Landers McLarty argues that this Court cannot enforce its promise not to protest a competing dealer's relocation because that promise was illegal when Landers McLarty made it.[84]

---

[77] *Rory*, 703 N.W.2d at 31 (internal quotation marks omitted).

[78] *Steele v. Drummond*, 275 U.S. 199, 205 (1927).

[79] *DeFrain v. State Farm Mut. Auto. Ins. Co.*, 817 N.W.2d 504, 512 (Mich. 2012).

[80] *Morris & Doherty*, 672 N.W.2d at 893.

[81] *Id.*

[82] *Advance-Rumely Thresher Co. v. Jackson*, 287 U.S. 283, 288 (1932) (emphasis added) (citing *Steele*, 275 U.S. at 205 ("It is only because of the dominant public interest that one, who has had the benefit of performance by the other party, is permitted to avoid [its] own obligation on the plea that the agreement is illegal."); *Twin City Pipe Line Co. v. Harding Glass Co.*, 283 U.S. 353, 356-57 (1931) ("It is only because of the dominant public interest that one who . . . has had the benefit of performance by the other party will be permitted to avoid his own promise."); *see also Oasis Oil, L.L.C. v. Mich. Props., L.L.C.*, Docket No. 306700, 2013 WL 6083715, *5 (Mich. Ct. App. Nov. 19, 2013) (a contract that technically violates a statute may still be enforced "when a party is ignorant of the illegal nature of the contract, and when it is a matter of slight illegality.").

[83] *Am. Cas. Co. of Reading, Pa. v. Rahn*, 854 F. Supp. 492, 500 (W.D. Mich. 1994).

[84] Dkt. 78 (Motion) at 20-21. This assertion contradicts the sworn deposition testimony of Landers McLarty's corporate representative, Chuck Cummings, and its member and general manager, Kevin Lawyer, who both testified that Overland Park Ventures assigning the 2007

23

But Landers McLarty cannot identify any "clearly apparent,"[85] "well defined," or "explicit"[86]

policy under Kansas law forbidding a dealer's agreement to waive its protest rights.

It points out that K.S.A. 8-2401 declares Kansas public policy under the Kansas

Licensure of Vehicle Sales and Manufacture Act (the "Act"). Section 8-2401 states that Kansas's

public policy is "to provide for fair and impartial regulation of those persons engaged in

manufacturing, distributing or selling of vehicles."[87] But Landers McLarty does not assert that

enforcing its promise not to protest relocations would impair the "fair and impartial regulation"

of vehicle sales, much less explain why that would be so.

Landers McLarty also points out that K.S.A. 8-2430(c) gives a vehicle dealer "standing to

protest the proposed . . . relocation of a new vehicle dealer."[88] But as explained above, statutory

rights are presumptively waiveable.[89] This includes statutory standing.[90] A contract is one valid

way to execute such a waiver.[91] Landers McLarty's no-protest promise in the 2007 Settlement

Agreement is therefore enforceable.

Finally, Landers McLarty points out that K.S.A. 8-2430(f) prohibits "any action to

penalize any dealer who exercises the rights provided under this section, or [act] for the purpose

---

Settlement Agreement to Plaintiffs "made [the Agreement] valid." Ex. K (Cummings Dep. Tr.)
at 77:5-13; *see also* Ex. L (Lawyer Dep. Tr.) at 132:20-133:4.

[85] *Morris & Doherty*, 672 N.W.2d at 893.

[86] *American Casualty*, 854 F. Supp. at 500.

[87] K.S.A. 8-2402 (*quoted in* Dkt. 78 at 18).

[88] K.S.A. 8-2430(c) (*quoted in* Dkt. 78 at 19).

[89] *Carter*, 612 N.W.2d at 150.

[90] *See In re Ault*, 689 F. App'x 623, 627 (10th Cir. 2017) (statutory standing "may be waived"); *Merrimon v. Unum Life Ins. Co. of Am.*, 758 F.3d 46, 53 n.3 (1st Cir. 2014); *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083, 1090 (9th Cir. 2012) ("Unlike constitutional standing, which is jurisdictional, we presume that statutory standing may be waived.").

[91] *Hunt Constr. Group*, 375 F. Supp. 2d at 616.

of preventing or avoiding the exercise by a dealer of the rights provided under this section."[92] But nobody—not Reed Auto, FCA US LLC, or this Court—is "penaliz[ing]" Landers McLarty or "preventing" it from exercising its protest rights under the Act. Landers McLarty waived those rights voluntarily in exchange for Overland Park Jeep and other competing dealers dismissing their protests against Landers McLarty's own relocation. If Landers McLarty's argument were to be accepted, the Agreement is void for lacking consideration, and Landers McLarty's 2007 relocation would be subject to renewed protest and, potentially, rescission. In any event, even if the Agreement could be construed as violating K.S.A. 8-2430(f), Michigan law requires that it "will not be adjudicated to be illegal when it is capable of a construction which will hold it and make it valid."[93] The Agreement can be construed within statute; it must be so construed.

The authorities Landers McLarty cites in its brief illustrate the difference between its enforceable waiver and agreements that violate explicit public policy. In *Strike Four, LLC v. Nissan N. Am., Inc.*, the New Hampshire Supreme Court analyzed a waiver agreement between a dealer and a manufacturer under which the dealer agreed to cancel its franchise relationship with the manufacturer.[94] It also analyzed two sections of New Hampshire's dealership statute. One section bars manufacturers from canceling a franchise relationship "[n]otwithstanding the terms, provisions, or conditions of any agreement . . . and notwithstanding the terms or provision to any waiver," subject to certain conditions.[95] The other section states "agreements of any type . . . which are inconsistent with this chapter shall be void as against public policy and unenforceable

---

[92] K.S.A. 8-2430(f) (*quoted in* Dkt. 78 (Motion) at 19).

[93] *Stillman v. Goldfarb*, 431 N.W.2d 247, 251-52 (Mich. Ct. App. 1988).

[94] 64 A.3d 936, 938 (N.H. 2013) (*cited in* Dkt. 78 (Motion) at 21).

[95] *Id.* at 941 (quoting N.H. Rev. Stat. Ann. 357-C:7).

in the courts or the motor vehicle industry board of this state."[96] The statute therefore contained two separate provisions expressly invalidating waiver agreements.[97] The New Hampshire Supreme Court held that the waiver agreement at issue was unenforceable.[98]

In *Bayview Buick-GMC Truck, Inc. v. Gen. Motors Corp.*, the Florida Court of Appeals analyzed a franchise agreement between a dealer and a manufacturer under which the dealer conferred on the manufacturer a right of first refusal if the dealer sold its assets.[99] When the dealer sought to sell its assets to another buyer, the manufacturer objected.[100] The Florida Court of Appeals analyzed Fla. Stat. Ann. § 320.643(1), which states that a manufacturer cannot object to an asset sale, so long as certain conditions are met, "[n]otwithstanding the terms of any franchise agreement."[101] Just like in *Strike Four*, the relevant statute expressly forbade agreements waiving a statutory right.[102] The Florida Court of Appeals held that the right of first refusal was therefore unenforceable as contrary to public policy.[103]

Kansas's dealership statute includes language like the New Hampshire and Florida statutes analyzed in these cases, but not in the section authorizing dealers' protests. K.S.A. 8-2414(e)(2), for example, states that, "notwithstanding any agreement, the following [factors] alone shall not constitute good cause for the termination, cancellation or nonrenewal of a franchise agreement." Section 8-2414 shows that the Kansas legislature knew how to expressly prohibit agreements contrary to statute when it intended to do so. K.S.A. 8-2430—under which

---

[96] *Id.* at 947.

[97] *Id.*

[98] *Id.* at 948-49.

[99] 597 So.2d 887, 888 (Fla. DCA 1st Dist. 1992) (*cited in* Dkt. 78 (Motion) at 21).

[100] *Id.* at 889.

[101] *Id.* at 890.

[102] *See id.*; *see also* 64 A.3d at 941 (citing N.H. Rev. Stat. Ann. § 357-C:7).

[103] *See id.*

Landers McLarty's defense arises—lacks any comparable language. When a legislature "includes a provision in one statute and omits the provision in a related statute, [a] Court should construe the omission as intentional and should not include an omitted provision where none exists."[104]

Unlike the plaintiffs in *Strike Four* or *Bayview Buick*, Landers McLarty cannot identify any Kansas statute that expressly prohibits any agreement to waive rights under the Act.  No such statute exists, certainly not one enshrining a "dominant public interest" sufficient to justify invalidating Landers McLarty's promise after it long ago obtained the benefit of its bargain.[105] Landers McLarty's illegality defense thus fails substantively as well as procedurally, and it cannot obtain summary judgment.

**B.**      **Landers McLarty cannot show that Plaintiffs lack standing as a matter of law.**

As Plaintiffs explain fully in their motion for summary judgment, they are successors and third-party beneficiaries under the Agreement. In addition, Overland Park Ventures assigned Plaintiffs its rights under the Agreement, and the Agreement's plain language makes Landers McLarty liable for Plaintiffs' attorneys' fees because Plaintiffs prevailed in the Protest. At minimum, Landers McLarty cannot show a right to judgment as a matter of law.

**(1)      Plaintiffs have standing under the Agreement as Overland Park Jeep's successor.**

As Plaintiffs explain in their motion for summary judgment, the Agreement's plain language gives Reed Auto standing to sue as Overland Park Jeep's successor. "Under Michigan law, the primary goal in the construction or interpretation of any contract is to honor the intent of

---

[104] *Wolverine Power Coop v. DEQ*, 777 N.W.2d 1, 10 (Mich. Ct. App. 2009).

[105] *Advance-Rumely Thresher*, 287 U.S. at 288.

the parties."[106] Generally, "contractual interpretation begins and ends with the actual words of a written agreement,"[107] which must be given their "plain and ordinary meaning."[108]

The 2007 Settlement Agreement "inure[s] to the benefit of and [is] binding on the [parties'] successors."[109] The Agreement does not define "successors," but to the extent that word's meaning is unclear, this court "may consult a dictionary" to obtain clarification.[110] A "successor" is one "who succeeds to the . . . rights . . . of another" or "[a] corporation that, through amalgamation, consolidation, or other assumption of interests, is vested with the rights and duties of an earlier corporation."[111]

Under this plain meaning, Reed Auto is the successor to Overland Park Jeep. After Overland Park Jeep changed its name to Overland Park Ventures, Reed Auto "succeeded to" and was "vested with" Overland Park Ventures' rights and duties when it acquired that entity's assets in 2017,[112] as evidenced by it continuing to operate a dealership selling the same cars at the same location employing the same staff as Overland Park Ventures had done.[113] It therefore has rights under the Agreement as Overland Park Jeep's successor.

---

[106] *Evoqua Water Techs., LLC v. M.W. Watermark, LLC*, 940 F.3d 222, 229 (6th Cir. 2019) (internal quotation marks omitted).

[107] *Innovation Ventures v. Liquid Mfg.*, 885 N.W.2d 861, 870 (Mich. 2016).

[108] *Total Quality, Inc. v. Fewless*, --- N.W.2d ---, No. 346409, 2020 WL 3885083, *5 (Mich. Ct. App. July 9, 2020).

[109] Ex. M (2007 Settlement Agreement) at 4 (ReedAuto_000064).

[110] *Total Quality*, 2020 WL 3885083, at *5.; *see also Dawson v. Rent-A-Center Inc.*, 490 Fed. App'x 727, 730 (6th Cir. 2012) (using Black's Law Dictionary to define "successor").

[111] Black's Law Dictionary (11th ed. 2019).

[112] Black's Law Dictionary (11th ed. 2019) (defining "successor"); ex. A (APA) at 1 (ReedAuto_0011113) (stating that the parties entered the APA "for the purpose of [Reed Auto] succeeding [Overland Park Ventures] as the authorized Chrysler, Jeep, Dodge, and Ram dealer" in Overland Park).

[113] Ex. F (Reed Dep. Tr.) at 201:9-22, 202:4-203:7, 204:3-6.

Landers McLarty cannot support its arguments to the contrary. It argues, for example, that Plaintiffs "are not vested with rights and did not assume liabilities of" Overland Park Ventures.[114] It cites no authority for that assertion, however, and in fact it later cites sections of the APA describing precisely the many rights and liabilities that Reed Auto did assume when it became Overland Park Ventures' successor. To the extent Landers McLarty intends to assert that, as a matter of law, one entity must assume *every* asset and liability of another entity in order to be that entity's successor, it provides no support for that assertion either.

Any such assertion is incorrect anyway. As Reed Auto explained in its motion for summary judgment, Michigan law treats an entity purchasing another entity's assets the other entity's successor if

> three requirements are satisfied:
>
> 1. There is a continuation of the enterprise of the seller corporation, so that there is a continuity of management, personnel, physical location, assets, and general business operations.
>
> 2. The seller corporation ceases its ordinary business operations, liquidates and dissolves as soon as legally and practically possible.
>
> 3. The purchasing corporation assumes those liabilities and obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation.[115]

This is true even when the purchase changes the owning shareholders or the business's name.[116]

Reed Auto showed in its motion for summary judgment that it meets these criteria for being Overland Park Jeep's successor. Reed Auto acquired Overland Park Ventures' liabilities and obligations to the extent necessary to continue Overland Park Ventures' business operations

---

[114] *See* Dkt. 78 (Motion) at 28.

[115] *Charter Twp. Of Oshtemo v. Am. Cyanamid Co.*, 876 F. Supp. 934, 937 (W.D. Mich. 1994) (internal quotation marks omitted).

[116] *First Presbyterian Church of Ypsilanti v. H.A. Powell Pipe Organs, Inc.*, No. 07-13132, 2010 WL 419972, *7 (E.D. Mich. Feb. 1, 2010).

without interruption.[117] It also retained Overland Park Ventures' management staff, personnel, physical location, assets, and general business operations.[118]

Landers McLarty raises two other successorship arguments, both of which fail. First, it argues that Plaintiffs "do not have privity of contract" with the parties to the 2007 Settlement Agreement and do not fit any of the "traditional state law principle[s] recognized" in *Arthur Andersen, LLP v. Carlisle* to allow nonparties to a contract to sue under the contract.[119] But "[p]rivity [includes a] successive interest in the same rights" as a party to a contract.[120] Thus, a contracting party's successor is in privity with the other contracting parties.[121] Moreover, *Arthur Andersen* did not purport to list all theories under which a nonparty can sue, and the passage from that case that Landers McLarty quotes is itself a quote from a secondary source pertaining strictly to arbitration agreements.[122] It does not bar Plaintiffs' successor theory in this case.

Second, Landers McLarty argues that Reed Auto is not Overland Park Jeep's successor under the 2007 Settlement Agreement because it did not specifically agree to assume the Agreement under the APA. This argument improperly conflates successorship and assumption. It is true that Overland Park Ventures did not assign its interest in the Agreement to Reed Auto under the APA. But the Agreement applies to both "successors [and] assigns."[123] Each term in a contract is presumed to have its own legal effect, and therefore "successors" includes parties

---

[117] *Charter Township of Oshtemo*, 876 F. Supp. at 937.

[118] Ex. F (Reed Dep. Tr.) at 202:4-23, 204:3-6.

[119] Dkt. 78 (Motion) at 27 (citing 556 U.S. 624, 631 (2009)).

[120] *Elam v. Aurora Loan Servs., LLC*, No. 18-5743, 2019 WL 7603379, at *3 (6th Cir. Aug. 9, 2019).

[121] *Id.*

[122] *See* 556 U.S. at 631 (quoting 21 R. Lord, Williston on Contracts § 57:19, p. 183 (4th ed. 2001) (*cited in* Dkt. 78 at 27).

[123] Ex. M (2007 Settlement Agreement) at 4 (ReedAuto_000064).

other than "assigns."[124] Any lack of assignment under the APA is irrelevant to Reed Auto's status as Overland Park Jeep's successor.

As Overland Park Jeep's successor, Reed Auto has standing to sue under the Agreement. Generally, "[a] corporation's successor-in-interest is entitled to the benefit of a release to the corporation."[125] This includes the right to enforce the release by initiating a cause of action for breach.[126] That is what Reed Auto has done here. Landers McLarty is therefore not entitled to judgment as a matter of law, and this Court should deny its motion.

> **(2)    Plaintiffs have standing to sue under the Agreement as third-party beneficiaries.**

Plaintiffs also have standing to sue under the Agreement as third-party beneficiaries. Under Michigan law, a party is a third-party beneficiary if a promisor has "undertaken to give or to do or refrain from doing something directly to or for" that party.[127] Third parties are "broadly empower[ed] . . . to sue as promisees,"[128] and a contract can "confer third-party beneficiary rights upon a class of parties" without naming them.[129] Thus, a nonparty not named in a contract can still sue under the contract "so long as this nonparty can show that [it] is a member of a class

---

[124] *Tuscany Grove Ass'n v. Peraino*, 875 N.W.2d 234, 237 (Mich. Ct. App. 2015) (prohibiting constructions that "render any part of [a contract] surplusage or nugatory, and instead . . . gives effect to every word, phrase, and clause.").

[125] 19 C.J.S. Corporations § 899 (June 2020 Update); *see also* 6 Mich. Civ. Jur. Corporations § 490 (May 2020 Update) (an entity purchasing a corporation's assets generally "acquires the same rights, franchises, and privileges as the corporation possessed."); *Taylor v. DaimlerChrysler AG*, 237 F. Supp. 2d 789, 793 (E.D. Mich. 2002) (a successor corporation is entitled to invoke its predecessor's contractual rights).

[126] *See* 19 Am. Jur. 2d Corporations § 2282 ("a particular cause of action [also] passes" to a successor entity so long as the relevant jurisdiction considers the cause of action "assignable"); *ISRA Vision, AG v. Burton Indus., Inc.*, 654 F. Supp. 2d 638, 647 (E.D. Mich. 2009) (under Michigan law, a contractual right is assignable absent specific contractual language to the contrary).

[127] Mich. Comp. Laws § 600.1405.

[128] *Guardian Depositors Corp. of Detroit v. Brown*, 287 N.W. 798, 800 (Mich. 1939).

[129] *Id.*

for whose benefit the contract was made."[130] This rule is "[a]lmost universally recognized and enforced," even when "the third party was nonexistent or not specifically designated at the time the contract was made."[131] If the third-party beneficiary "was identifiable as a third-party beneficiary at the time of performance . . . [it] may enforce the terms of the agreement."[132]

Here, Landers McLarty promised "not to protest . . . *any* relocation . . . of *any* DaimlerChrysler vehicle lines into the Overland Park Sales Area."[133] That is a direct promise to "refrain from doing something directly to" a defined class of entities: DaimlerChrysler vehicle lines dealers relocating into the Overland Park Sales Area. As explained in Plaintiffs' summary judgment motion, Reed Auto is clearly within that class.

Landers McLarty acknowledges that it promised not to protest any competing dealer's relocation into Overland Park, but it argues that the promise does not apply to Plaintiffs because "Plaintiffs were not parties to the Agreement when it was executed" and the "Agreement does not directly speak of Plaintiffs."[134] Under the rules of Michigan law set forth above, however, these facts do not stop Plaintiffs from asserting rights as a third-party beneficiary.[135] It also cites multiple cases denying third-party beneficiary rights, but it does not bother to explain how those cases affect this Court's analysis here.[136] None of those cases contradicts the authorities cited

---

[130] 5A Mich. Civ. Jur. Contracts § 17.

[131] *Contract Rights as Commercial Security: Present and Future Intangibles*, 67 Yale L.J. 847, 890 (1958).

[132] *Commercial Ins. Co. of Newark, N.J. v. Pacific-Peru Constr. Corp.*, 558 F.2d 948, 954 (9th Cir. 1977) (citing Restatement of Contracts § 139 (1932); J. Calamari & J. Perillo, *The Law of Contracts*, § 251 (1970)).

[133] Ex. M (Agreement) at 1 (ReedAuto_000061) (emphasis added).

[134] Dkt. 78 at 26.

[135] *See, e.g., Commercial Insurance*, 558 F.2d at 954 (a third-party beneficiary has rights as such if it is "identifiable . . . at the time of performance."); *Guardian Depositors*, 287 N.W. at 800 (a third-party beneficiary can use under a contract even if the contract does not mention the beneficiary by name).

[136] Dkt. 78 (Motion) at 26.

above and in Plaintiffs' summary judgment motion, and none is sufficient to entitle Landers McLarty to judgment as a matter of law.

Under Michigan law, a third-party beneficiary of a promise "has the same right to enforce said promise that he would have had if the same promise had been made directly to him as the promisee."[137] That is, the third-party beneficiary "stands in the shoes of the promisee and is afforded the right to enforce the promise against the promisor."[138] Courts applying Michigan law have held that these practical rules apply specifically to releases and promises not to sue.[139] Plaintiffs are third-party beneficiaries under the 2007 Settlement Agreement, and they therefore have standing to sue under it.

### (3)    Plaintiffs have standing under the Agreement as assignees.

In moving for summary judgment, Landers McLarty notes that "[u]nder Michigan contract law, rights can be assigned unless the assignment is clearly restricted."[140] It describes in detail how Overland Park Ventures did not assign its rights under the 2007 Settlement Agreement to Plaintiffs in the APA.[141] Landers McLarty acknowledges that Overland Park Ventures did assign its rights under the Agreement to Plaintiffs in July 2019, but it asserts that

---

[137] Mich. Comp. Laws § 600.1405.

[138] *Uber v. Dep't of Natural Resources*, No. 211685, 2001 WL 705317, *3 (Mich. Ct. App. Mar. 20, 2001) (citing *Koppers Co., Inc. v. Garling & Langlois*, 594 F.2d 1094, 1098 (6th Cir. 1979)).

[139] *See, e.g., Taggart v. United States*, 880 F.2d 867, 869-70 (6th Cir. 1989) (a nonparty to a release can enforce the release where "the release purports to confer third-party beneficiary rights upon a class of parties which includes the" nonparty); *Jachim v. Coussens*, 278 N.W.2d 708, 710-11 (Mich. Ct. App. 1979) (where a release "directly benefited" a third party, the third party is entitled to enforce it).

[140] *Evoqua Water Techs., LLC v. M.W. Watermark, LLC*, 940 F.3d 222, 229 (6th Cir. 2019) (internal quotation marks omitted).

[141] Dkt. 78 (Motion) at 23.

Plaintiffs cannot sue as assignees because they "lacked standing to enforce the Agreement at the time Landers McLarty filed its Notice of Protest" with the Kansas Department of Revenue.[142]

Under Michigan law, however, an assignee may pursue claims even if it did not obtain the assignment until after the lawsuit is filed.[143] In *Cannon Township*, sewage flooded property owners' home when a water line backed up.[144] The line was jointly maintained by a township and a school district, and the owners sued the both entities.[145] The owners quickly settled with the township, receiving a settlement payment from the township's insurer.[146] The township then sued the school district on its own behalf and on behalf of its insurer.[147] The insurer was not a party to the action, but over a year after the township filed suit, the insurer executed an agreement assigning its claims to the township.[148]

The school district moved for summary judgment on the claims that the township filed in the insurer's name, arguing that the township was not the real party in interest as to those claims on the date the suit was filed.[149] The trial court denied the motion.[150]

The Court of Appeals affirmed the trial court's decision.[151] It recognized "that the [insurer] did not assign its rights to the township until after this lawsuit was filed," and that, "[t]herefore, at the time the township initiated the suit, it was not the real party in interest" as to

---

[142] *Id.*

[143] *See Cannon Twp. v. Rockford Public Schools*, 875 N.W.2d 242, 247 (Mich. Ct. App. 2015).

[144] *Id.* at 244.

[145] *Id.*

[146] *Id.*

[147] *Id.*

[148] *Id.*

[149] *Id.* at 246.

[150] *Id.*

[151] *Id.*

the insurer's claims.[152] But the township had become the real party in interest when it received the insurer's assignment, and the operative complaint reflected as much.[153] The township was therefore entitled to litigate as the insurer's assignee.[154]

This case is even clearer. Plaintiffs obtained the relevant assignment before this case began.[155] As opposed to the plaintiff in *Cannon Township*, therefore, they were the real parties in interest when they initiated the suit.[156] At all times during this litigation, Plaintiffs had a present right to obtain relief as assignees, and Landers McLarty presents no facts or authorities to the contrary. It is therefore not entitled to summary judgment.

**(4)      Landers McLarty can be held liable for breaching the Agreement.**

Under Michigan law, "an exception to the general American rule" regarding attorney fees "exists where attorney fees are provided by contract of the parties."[157] Such provisions "are generally valid judicially enforceable under the same standard as other contractual provisions,[158] meaning that courts must determine the parties' intent objectively from the words used in the agreement.[159]

In this case, the Agreement states that,

> [i]n the event of any dispute arising under or concerning this Agreement, the prevailing party shall be entitled to recover its reasonable attorney's

---

[152] *Id.* at 247.

[153] *Id.*

[154] *Id.*

[155] *See* Ex. C (OPV Assignment) at 1-2 (ReedAuto_002834); Ex. D (RAG Assignment) at 1 (ReedAuto_002838).

[156] *See id.*; *cf. Cannon Township*, 875 N.W.2d at 247.

[157] *Jay Chevrolet, Inc. v. Dedvukaj*, 874 N.W.2d 146, 150 (Mich. Ct. App. 2015) (internal quotation marks omitted).

[158] *Poly-Flex Constr., Inc. v. Neyer, Tiseo & Hondo, Ltd.*, 600 F. Supp. 2d 897, 907-08 (W.D. Mich. 2009).

[159] *Evoqua Water Technologies*, 940 F.3d at 229.

fees and costs from the non-prevailing party in connection with any
litigation regarding such dispute . . . .[160]

Plaintiffs claim that Landers McLarty breached the Agreement by protesting Reed Auto's

proposed relocation.[161] They seek as damages attorney's fees from the Protest and this case.[162]

Landers McLarty acknowledges all this, but it argues that Plaintiffs still cannot assert any

claim for damages as a matter of law for three reasons, each of which fail. First, Landers

McLarty argues that its Protest was not a dispute "arising under or concerning" the

Agreement,[163] But the Protest obviously did concern the Agreement—Landers McLarty filed it

in violation of its obligations under the Agreement. Once Reed Auto discovered the Agreement,

it immediately became Reed Auto's principal defense to the Protest. Landers McLarty withdrew

the Protest immediately after learning that Reed Auto had discovered the Agreement.

Landers McLarty relies exclusively on *Thrifty Oil Co. v. Bank of Am. Nat. Tr. & Sav.

Ass'n*[164] for the proposition that a prevailing party cannot "recover attorneys' fees because

neither the validity nor enforceability of the contract was at issue in" an earlier proceeding.

*Thrifty Oil* is a bankruptcy case. In it, Bank of America sought attorney's fees for litigating state

law and federal law claims.[165] Thrifty Oil Company asserted that Bank of America could not

obtain fees because Bank of America "waived its right to seek attorney's fees when it entered

into a settlement agreement" that contained an express fees waiver.[166] The Ninth Circuit held that

"[a]ttorney's fees may be awarded to an unsecured creditor in a bankruptcy proceeding only to

---

[160] Ex. M (2007 Settlement Agreement) at 3 (ReedAuto_000063).

[161] Dkt. 1 (Complaint) at ¶¶ 54-67.

[162] *Id.* at ¶¶ 60, 67.

[163] Dkt. 78 (Motion) at 30-31.

[164] 322 F.3d 1039 (9th Cir. 2003).

[165] *Id.* at 1040.

[166] *Id.*

the extent that state law governs the substantive issues and authorizes the court to award fees."[167] But it also held that, because section 502(b) of the federal bankruptcy code "is exclusively governed by federal law, no fees could ordinarily be awarded to a prevailing party" for litigation conducted under that statute.[168] In sum, *Thrifty Oil* analyzes only a fee waiver—not a prevailing-party clause—under a "state law [that] authorizes" fee awards and the federal bankruptcy code.[169] It does not analyze any claim for a fees award under contract, and, as Landers McLarty acknowledges, the Sixth Circuit declined to follow it.[170] It is inapposite here.

Second, Landers McLarty argues that Plaintiffs cannot recover fees incurred during the Protest because the Agreement only permits fees incurred during "litigation," which, according to Landers McLarty, does not include administrative proceedings.[171] Its only support for this assertion is a dictionary definition that expressly includes "[a] judicial contest [or] controversy" and does not expressly exclude administrative proceedings.[172] And Landers McLarty admits that Kansas courts have characterized the state's administrative proceedings as "quasi-judicial."[173] Michigan courts characterize administrative proceedings likewise, meaning that those proceedings

> include procedural characteristics common to courts, such as a right to a
> hearing, a right to be represented by counsel, the right to submit exhibits,

---

[167] *Id.* at 1041.

[168] *Id.*

[169] *Id.*

[170] Dkt. 78 (Motion) at 31 n.13 (citing *In re Dow Corning Corp.*, 456 F.3d 668 (6th Cir. 2006).

[171] *Id.* at 31.

[172] Black's Law Dictionary (6th ed. 1990) (*cited in* Dkt. 78 (Motion) at 31).

[173] Dkt. 78 (Motion) at 32. Landers McLarty seems to suggest that "quasi-judicial" means insufficient to be considered "judicial," but the authority it cites, *Clear Water Truck Co., Inc. v. M. Bruenger & Co., Inc.*, 519 P.2d 139, 142 (Kan. 1974), supports the proposition that "quasi-judicial" administrative proceedings are sufficiently judicial as to be comparable to court-litigated actions.

and the authority to subpoena witnesses and require parties to produce
documents.[174]

It should be no surprise that Michigan and federal courts refer regularly to contested

administrative actions as "litigation."[175] There is thus no basis under Michigan law for Landers

McLarty's assertion that the 2007 Settlement Agreement excludes a right to fees incurred in

administrative protests.

Third, Landers McLarty argues that Reed Auto cannot assert a damages claim because

RAG has been paying invoices for legal fees.[176] But Plaintiffs have produced documents that

RAG has booked those invoices against Reed Auto's accounts.[177] It has therefore incurred

"attorney's fees . . . in connection with litigation" under the Agreement, and Landers McLarty is

liable for paying them.[178] In sum, Landers McLarty cannot establish any right to judgment as a

matter of law on Plaintiffs' contract claims, and its motion on those claims should be denied.

**C.    Landers McLarty is not entitled to summary judgment on Plaintiffs'
malicious prosecution claim because there is a genuine issue of material fact
as to whether it acted without probable cause and with malice in filing the
Protest.**

Under Kansas law, a plaintiff asserting a malicious prosecution claim must show that the

defendant (1) initiated civil procedures against the plaintiff (2) without probable cause and (3)

with malice, (4) that the proceeding terminated in favor of the plaintiff; and (5) that the plaintiff

---

[174] *William Beaumont Hosp. v. Wass*, 889 N.W.2d 745, 751 (Mich. Ct. App. 2016).

[175] *See, e.g.*, *Fed. Maritime Bd. v. Isbrandtsen Co.*, 356 U.S. 481, 498 (1958) ("in certain
kinds of litigation practical considerations dictate a division of functions between court and
agency . . . ."); *Henry Bierce Co. v. N.L.R.B.*, 23 F.3d 1101, 1106 (6th Cir. 1994) ("an agency may
. . . decide the claim if it is fully and fairly litigated . . . ."); *Nummer v. Treasury Dep't*, 533
N.W.2d 250, 253 (Mich. 1995) ("Whether the determination is made by an agency or court[,] the
interest in costly and repetitive litigation . . . remains.").

[176] Dkt. 78 (Motion) at 32.

[177] *See* Ex. E (Invoice).

[178] Ex. M (2007 Settlement Agreement) at 3 (ReedAuto_000063).

sustained damages.[179] Probable cause for initiating a civil proceeding "exists when there is a reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious, or prudent, man in the belief that the party committed the act of which he is complaining."[180] Malice is present sufficient to support a malicious prosecution claim "where a civil action was initiated primarily for a purpose other than that of securing proper adjudication of the claim on which the action is based."[181]

Here, Plaintiffs have produced evidence that, at minimum, creates a genuine issue of material fact as to whether Landers McLarty acted without probable cause and with malice. In fact, the only evidence produced by either party that expressly states Landers McLarty's intent in filing the Protest that was created before it filed the Protest is an email from Kevin Lawyer,[182] a member of Landers McLarty and Olathe Dodge's general manager,[183] to other Landers McLarty officers sent April 10, 2019, just 16 days before Landers McLarty filed the Protest.[184] In the email, Mr. Lawyer states that "any delays from protest will make it impossible for [Reed Auto] to be out of their property by May 2020 and that is the real leverage we have here."[185] Mr. Lawyer also brags that Reed Auto does not know its landlord "is also the person leasing my home in Loch Lloyd while building a $6million [*sic*] home around the corner from mine for two years and the penalties for not being off that property would cripple the store."[186] He concludes

---

[179] *Holick v. Burkhardt*, 388 F. Supp. 3d 1370, 1379 (D. Kan. 2019).

[180] *Id.* at 1382.

[181] *Bartal v. Brower*, 993 P.2d 629, 633 (D. Kan. 1999).

[182] Ex. B (K. Lawyer Email) at 1 (LM001709).

[183] *Id.*

[184] *Id.*

[185] *Id.*

[186] *Id.*

that Reed Auto "cannot afford any delays and Chrysler knows it and now so do you."[187] This email shows that Landers McLarty did not file the Protest based on any "reasonable ground for suspicion" that it was entitled to block Reed Auto's relocation.[188] Instead, it acted "primarily for a purpose other than that of securing proper adjudication," *i.e.*, injuring Reed Auto's business.[189]

Landers McLarty offers 25 facts it alleges show a reasonable basis for filing the Protest.[190] None of those facts is a contemporaneous expression of intent contradicting Mr. Lawyer's email. Rather, they assert bromides like, "Landers McLarty has invested substantial time and expense in the establishment of its automobile dealership."[191] This assertion, even if proved, would not bear on Landers McLarty's professed good faith in filing the Protest.[192] As Mr. Lawyer's email shows, Landers McLarty's only genuine basis for believing the Protest would succeed was its hope that Plaintiffs would not discover the Agreement. At minimum, it is "evidence presented on a dispositive issue [that] is subject to conflicting, reasonable interpretations," and summary judgment is therefore improper.[193]

---

[187] *Id.*

[188] *Holick*, 388 F. Supp. 3d at 1379.

[189] *Bartal*, 993 P.2d at 633.

[190] Dkt. 78 at 40.

[191] Dkt. 78 at 39.

[192] *See Sampson v. Hunt*, 665 P.2d 743, 754 (Kan. 1983) (*cited in* Dkt. 78 (Motion) at 41).

[193] *SCO Group, Inc. v. Novell, Inc.*, 578 F.3d 1201, 1218 (10th Cir. 2009). In a string citation, Landers McLarty cites *Carnegie v. Gage Furniture, Inc.*, 538 P.2d 659 (Kan. 1975), for the proposition that "the advice of an attorney is a complete defense to malicious prosecution." Dkt. 78 at 41. But Landers McLarty has not asserted counsel's advice as an affirmative defense, and it should be barred from doing so for the same reasons it should be barred from raising illegality as set forth above. In addition, "to establish a good faith reliance on counsel defense, the defendant must show (1) a request for advice of counsel on the legality of a proposed action, (2) full disclosure of the relevant facts to counsel, (3) receipt of advice from counsel that the action to be taken will be legal, and (4) reliance in good faith on counsel's advice." *United States v. Wesberry*, 656 F. App'x 895, 899 (10th Cir. 2016) (internal quotation marks omitted). Here, Landers McLarty relies on a single statement from one of its officers that "Landers McLarty consulted with its attorneys and was operating under the advice of its attorneys in making the

**D.      Landers McLarty cannot show that it is entitled to judgment as a matter of law on Plaintiffs' MCPA claim.**

Claims under the MCPA "are permitted . . . when brought by businesses against a competitor."[194] "Implicit in . . . cases finding a right of action in non-consumers under the MCPA is the understanding that the intent of protecting consumers is well served by allowing suit to be brought by non-consumers who have a significant stake in the events."[195] Plaintiffs filed their MCPA claim in this spirit, and that claim is not subject to summary judgment.

Landers McLarty's various counterarguments fail. First, Landers McLarty argues that the MCPA does not apply to "'[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States.'"[196] It also cites various Michigan authorities rejecting MCPA claims because the activity asserted to be illegal was regulated by a Michigan or federal administrative authority.[197] But Landers McLarty filed its Protest in the Kansas Department of Revenue, which acts neither "under statutory authority of [Michigan] or the United States."[198]

Second, Landers McLarty argues that it is not liable under the MCPA because its improper conduct occurred in Kansas. But Landers McLarty offers absolutely no legal authority of any kind showing that MCPA claims cannot apply to out-of-state businesses.[199] To the

decision to file" the Protest. *See* Dkt. 78 at 12 (citing Dkt. (Motion) 78-3). For these reasons, Landers McLarty's assertion of an advice-of-counsel defense fails.

[194] *Innovation Ventures, LLC v. N2G Distrib., Inc.*, 779 F. Supp. 2d 671, 681 (E.D. Mich. 2011).

[195] *John Labatt Ltd. V. Molson Breweries*, 853 F. Supp. 965, 970 (E.D. Mich. 1994).

[196] Dkt. 78 (Motion) at 33 (quoting Mich. Comp. Laws § 445.904(1)).

[197] *Id.* at 33-34 (citing *Liss v. Lewiston-Richards, Inc.*, 732 N.W.2d 514 (Mich. 2007); *Smith v. Globe Life Ins. Co.*, 597 N.W.2d 28 (Mich. 1999).

[198] Mich. Comp. Laws § 445.904(1).

[199] *See* Dkt. 78 (Motion) at 34-35.

contrary, federal courts have previously analyzed how the MCPA applies to foreign companies.[200] Landers McLarty does not explain why this case is any different.

Third, Landers McLarty argues that Plaintiffs cannot sue under the MCPA because the Protest was not primarily for "'personal, family or household purposes.'"[201] But where a "[p]laintiff is in the business of providing . . . goods for personal, family, or household purposes, its conduct is 'trade or commerce' as defined by the MCPA."[202] And, as set forth above, "MCPA claims are permitted even when brought by businesses against a competitor"[203] because "the intent of protecting consumers is well served by allowing suit to be brought by non-consumers who have a significant stake in the events."[204] As car dealers, Landers McLarty and Plaintiffs are all "in the business of providing . . . goods for personal, family, or household purposes," and therefore Plaintiffs are entitled to sue under the MCPA.[205]

Fourth, Landers McLarty argues that Plaintiffs cannot pursue an MCPA claim because the Protest is not a "transaction" under the MCPA.[206] Plaintiffs filed their MCPA claim under Mich. Comp. Laws § 445.903(n), which makes a defendant liable for "[c]ausing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction."[207] Although "the MCPA does not define the term 'transaction,'" the Michigan Court of Appeals has adopted a definition that includes "'proceeding" and "[s]omething that has

---

[200] *See, e.g., Ammex, Inc. v. Cox*, 351 F.3d 697, 702-03 (6th Cir. 2003).

[201] Dkt. 78 (Motion) at 35 (quoting Mich. Comp. Laws § 445.902(g)).

[202] *Innovation Ventures*, 779 F. Supp. 2d at 681.

[203] *Id.*

[204] *John Labatt*, 853 F. Supp. at 970.

[205] Landers McLarty admits that "[i]t is a new vehicle dealer [selling] new and used motor vehicles to the consuming public." Dkt. 78 at 9 (SOF ¶ 39(a)).

[206] *See* Dkt. 78 (Motion) at 36.

[207] *See* Dkt. 1 (Complaint) at ¶ 69 (citing Mich. Comp. Laws § 445.903(n)).

taken place, whereby a cause of action has arisen, [or] acts . . . by which the legal relations of such persons between themselves are altered.'"[208] In addition, § 445.903(n) "refers to causing a party to the transaction to misunderstand the party's legal rights, not to representations affecting the transaction itself."[209] For that reason, misrepresentations occurring before and after the transaction are actionable.[210] Landers McLarty has therefore presented no authority compelling judgment in its favor as a matter of law on this point either.

Fifth, Landers McLarty argues that Plaintiffs cannot prevail here because, in other jurisdictions, consumer protection acts bar claims duplicative of a contract claim.[211] Landers McLarty does not provide any legal authority in support of this argument from a Michigan court or any other court interpreting the MCPA.[212] Even if it could provide such authority, Plaintiffs' MCPA claim does not merely duplicate its contract claims—it asserts liability for Landers McLarty's "non-disclosure of [the] existence of the Agreement" to both Plaintiffs and the Kansas Department of Revenue as the claim's basis.[213] Landers McLarty's failure to disclose the Agreement is a separate act from its filing the Protest, and it is therefore an independent wrong sufficient to support an MCPA claim. At minimum, Landers McLarty fails to provide authority showing that it is entitled to judgment as a matter of law on Plaintiffs' MCPA claim, and this Court should therefore deny its motion.

---

[208] *Zine v. Chrysler Corp.*, 600 N.W.2d 385, 396 (Mich. Ct. App. 1999) (quoting Black's Law Dictionary (5th ed.)

[209] *Zine v. Chrysler Corp.*, 600 N.W.2d 385, 397 (Mich. Ct. App. 1999).

[210] *Id.*

[211] *See* Dkt. 78 (Motion) at 37.

[212] *See id.*

[213] Dkt. 1 (Complaint) at ¶ 69.

### E.      RAG has viable claims against Landers McLarty.

Landers McLarty spends the final four paragraphs of its brief arguing that RAG lacks any viable claim because it transferred its interest under the APA and Overland Park Ventures' assignment to Reed Auto. [214] But like many of Landers McLarty's other arguments, those four paragraphs contain no citation to any supporting legal authority whatsoever.[215] RAG was injured by Landers McLarty breaching the 2007 Settlement Agreement in that it was forced to retain counsel to defend an improper Protest. It was also injured because Landers McLarty withheld the Agreement during the Protest in violation of the MCPA. And it was injured because Landers McLarty filed the Protest, despite its promise not to do so, to "cripple [a competing] store."[216] Without presenting any legal authority showing a right to judgment as a matter of law against RAG, Landers McLarty cannot obtain summary judgment as to RAG.[217]

### 5.      Conclusion

Landers McLarty cannot establish a right to judgment as a matter of law on any issue in this case, and this Court should therefore deny its motion entirely.


Dated: February 5, 2021

---

[214] Dkt. 78 (Motion) at 42-43.

[215] *See id.*

[216] Ex. B (K. Lawyer Email) at 1 (LM001709).

[217] *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) ("Summary judgment is appropriate only if the movant shows that [it] is entitled to judgment as a matter of law.").

Respectfully submitted,

 */s/ Todd H. Bartels*
Todd H. Bartels                                      KS #18148
tbartels@polsinelli.com
Phillip J.R. Zeeck                          D. Kan. #78493
pzeeck@polsinelli.com
E. Benton Keatley                         D. Kan. #78780
ebkeatley@polsinelli.com
R. Dan Boulware          MO #24289 (*pro hac vice*)
dboulware@polsinelli.com
900 W. 48th Place, Suite 900
Kansas City, MO 64112
Phone: (816) 753-1000
Fax: (816) 753-1536

ATTORNEYS FOR PLAINTIFFS REED AUTO
OF OVERLAND PARK, LLC AND REED
AUTOMOTIVE GROUP, INC.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing has been filed electronically on the 5th day of February 2021.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's electronic filing.

 */s/ Todd H. Bartels*
ATTORNEY FOR PLAINTIFFS REED AUTO OF OVERLAND PARK, LLC AND REED AUTOMOTIVE GROUP, INC.