**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**REED AUTO OF OVERLAND PARK, LLC, et al.,**

      **Plaintiffs,**

      **v.**

**LANDERS MCLARTY OLATHE KS, LLC,**

      **Defendant.**

**Case No. 2:19-cv-02510-HLT**

## MEMORANDUM AND ORDER

This is a dispute between two competing car dealerships. Plaintiffs Reed Auto of Overland Park and Reed Auto Group allege that Defendant Landers McLarty breached a contract it entered into in 2007 with another dealership that later sold its assets to Plaintiffs. Part of that agreement was a promise by Defendant not to protest the relocation of certain vehicle lines in the Overland Park area for 15 years. Approximately 12 years into that agreement, Defendant filed a protest against Plaintiffs' proposed dealership relocation, which Plaintiffs now contend violated the 2007 contract, Michigan consumer protection law, and Kansas law against malicious prosecution.

Defendant moves for summary judgment on all claims, alleging that the contract is not enforceable by Plaintiffs because they were not parties to it, and that Plaintiffs are not entitled to relief on their other claims. Plaintiffs also move for partial summary judgment on whether they are successors or third-party beneficiaries under the contract. As discussed below, the Court finds there is a genuine question of fact as to whether at least one Plaintiff is a successor under the contract, and whether Defendant's protest amounts to malicious prosecution. Summary judgment is granted to Defendant on all other claims.

## I.   BACKGROUND[1]

Plaintiffs are Reed Auto of Overland Park ("RAOP") and Reed Auto Group ("RAG"). RAOP is a vehicle dealer under Kansas law; it was created in 2017. RAG is a holding company for various vehicle dealerships, including RAOP. Defendant Landers McLarty is also a vehicle dealer under Kansas law. Both RAOP and Defendant are authorized FCA US LLC dealers. RAOP has never contracted with DaimlerChrysler to sell the DaimlerChrysler vehicle line.

### A.   2007 Agreement Between Defendant, DaimlerChrysler, and Overland Park Jeep

In 2006, Defendant was an authorized franchisee of DaimlerChrysler. It was authorized to sell Dodge, Chrysler, and Jeep vehicles. It owned and operated two separate dealerships in Olathe, Kansas. At the time, Defendant was interested in combining two of its DaimlerChrysler dealerships into one location. To effectuate this, DaimlerChrysler filed a Notice of Relocation on behalf of Defendant with the state of Kansas. Another dealer in the area, Overland Park Jeep, filed a protest to stop Defendant from combining its dealerships. At the time, Overland Park Jeep operated a dealership at 8775 Metcalf Avenue in Overland Park, Kansas.

On July 24, 2007, Defendant, DaimlerChrysler, and Overland Park Jeep entered into a settlement agreement ("2007 Agreement"). The 2007 Agreement recited that a dispute had arisen among the parties surrounding Defendant's proposed relocation. Paragraph 1 of that agreement states:

> 1.   NO FUTURE PROTEST. Landers McLarty agrees not to protest or otherwise challenge any relocation or establishment of any DaimlerChrysler vehicle lines into the Overland Park Sales Area, as defined in Attachment 1 hereto for a period of fifteen (15) years from the date of the execution of this Agreement.

---

[1]   For purposes of summary judgment, the Court has set forth only those uncontroverted facts required to reach its decision. Plaintiffs have opted to not respond to each statement of fact set forth by Defendant, instead providing some categorical responses to a few facts and no response to others. In accordance with Rule 56(e)(2) and D. Kan. Rule 56.1(a), any facts not specifically controverted will be deemed admitted for purposes of summary judgment.

Paragraph 11 of the 2007 Agreement states, in relevant part: "In the event of any dispute arising under or concerning this Agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees and costs from the non-prevailing party in connection with any litigation regarding such dispute." Paragraph 16 states that the 2007 Agreement "shall inure to the benefit of and be binding on the successors, assigns, heirs, and legal representatives of the Parties to this Agreement." The 2007 Agreement is governed by Michigan law. The 2007 Agreement does not mention RAG, RAOP, or any "third-party beneficiary."

### B.      2017 Asset Purchase Agreement Between Overland Park Ventures and RAG/RAOP.

Overland Park Jeep subsequently changed its business name to Overland Park Ventures ("OPV"). Overland Park Jeep and OPV are owned and managed by Normal Vialle. RAOP is owned by RAG and managed by Randy Reed and Tyler Reed.

In 2017, RAG entered into an Asset Purchase Agreement ("2017 APA") with OPV.[2] OPV was the seller and RAG was the purchaser. The purpose of the 2017 APA was for RAG "to acquire substantially all of the assets of [OPV] for the purpose of succeeding [OPV] as the authorized Chrysler, Jeep, Dodge, and Ram dealer at the Dealership Location."

In paragraph 1.1 of the 2017 APA, OPV agreed to sell certain assets, including those listed in subparagraph 1.1(h), which stated:

> (h)      Subject to **Section 2.4** below, all of Seller's rights and obligations arising from and after the Closing Date under only the agreements and contracts listed on the attached *Schedule 1.1(h)* (the "**Assumed Contracts**").

---

[2]   The 2017 APA has been filed under seal because it contains commercially sensitive information not generally available to the public. Docs. 93, 95. But the specific provisions discussed here have been presented in Defendant's memorandum in support of its motion or are otherwise referenced in the parties' briefs. Although they are part of the 2017 APA, the Court discerns no commercially sensitive information in the portions quoted here.

Schedule 1.1(h) does not include the 2007 Agreement.

Paragraph 1.4(c) of the 2017 APA further clarifies that the purchased assets under the 2017 APA do <u>not</u> include rights under contracts or agreements that are <u>not</u> assumed liabilities under the agreement. Paragraph 1.2 of the 2017 APA addresses assumption of liabilities. That paragraph states:

> 1.2 **Assumption of Liabilities**. Commencing from and after the Closing Date, Purchaser will assume and agree to pay, perform, and discharge, promptly when due only those liabilities, obligations, and duties of Seller arising on and after the Closing Date with respect to the Assumed Contracts and the liabilities and obligations under unfilled retail orders being purchased by Purchaser pursuant to Section 1.1(k) above (collectively, the "**Assumed Liabilities**"). In no event, however, will Purchaser assume or incur any liability or obligation under this Section or otherwise in respect of any liabilities other than the Assumed Liabilities, including, but not limited to, the following (collectively the "**Excluded Liabilities**"): [listing excluded liabilities].

Paragraph 6.7 deals with "Assumed Contracts," and states that Schedule 6.7 lists all contracts and agreements <u>not</u> being assumed, including that "[l]iabilities under all agreements other than 'Assumed Contracts' are considered Excluded Liabilities." The 2007 Agreement is not specifically listed as an excluded liability on Schedule 6.7, nor is it listed on the list of assumed contracts.

The 2017 APA also lists some "Conditions Precedent to Obligations of Purchaser." These include RAG being approved for a new sales and service agreement for Chrysler, Jeep, Dodge, and Ram lines; RAG's obtaining all appropriate licenses for operation of a dealership with the state of Kansas; and receipt of floorplan financing from a third-party lending institution.

RAG did not obtain any right or interest from OPV in a sales and service agreement with FCA US LLC. A sales and service agreement is what makes a dealer an authorized dealer of new vehicles from a particular line and able to perform service and warranty work. RAG also obtained its dealer license from the state of Kansas, not OPV. Without approval and licensing from the state

of Kansas, a business cannot sell new or used vehicles in the state as a vehicle dealer. RAG also did not obtain any right or interest in floorplan financing from OPV. To be an authorized dealer, FCA requires a dealership to obtain floorplan financing from a third-party lender; without such financing, a dealer may not be able to obtain any new or used vehicles to sell.

On January 31, 2018, RAG assigned its rights under the 2017 APA to RAOP. On February 1, 2018, the deal memorialized in the 2017 APA between OPV and, now, RAOP closed. This included an assignment of all interests in the "Assumed Contracts." But when OPV sold its assets to RAG/RAOP, it did not assign its interest in the 2007 Agreement. RAG and RAOP were not even aware the 2007 Agreement existed until July 2019.

After the 2017 APA closed, RAOP continued to operate a dealership at 8775 Metcalf Avenue—where Overland Park Jeep (OPV's predecessor) formerly operated its dealership— selling Chrysler, Dodge, and Jeep vehicles. RAOP never conducted business as "Overland Park Jeep"—it operated as Reed Jeep, Chrysler, Dodge, Ram. Although RAOP initially planned to do business at the 8775 Metcalf Avenue location, it always intended to relocate the dealership to a more suitable location. RAOP retained all of OPV's employees except one, and used the same assets OPV used to operate its dealership, including inventory. OPV subsequently dissolved its business entity. RAOP subsequently became an FCA US LLC authorized dealer.

### C.       Protest by Defendant of Relocation of RAOP's Dealership

On January 15, 2019, FCA US LLC filed a notice on behalf of RAOP to relocate its dealership from 8775 Metcalf Avenue in Overland Park, Kansas, to 7050 West Frontage Road in Merriam, Kansas. The new location would be more profitable for RAOP. The proposed relocation address is within the Overland Park Sales Area, as defined by the 2007 Agreement. RAG was not involved in the notice to relocate.

On April 25, 2019, Defendant filed a Notice of Protest under K.S.A. § 8-2430 contesting the relocation of RAOP's dealership. Defendant did not file any protest having to do with RAG.

RAOP and Defendant exchanged written discovery during the protest. But Defendant did not produce a copy of the 2007 Agreement. RAOP only discovered the agreement after the owner of Overland Park Jeep/OPV brought it to RAOP's attention in July 2019. FCA US LLC never objected to Defendant's protest, never indicated it had any authority to enforce the 2007 Agreement, never claimed that Defendant had breached the agreement, and never indicated that Defendant did anything wrong in protesting RAOP's relocation request.

On July 9, 2019, OPV assigned its rights and interest in the 2007 Agreement to RAG, who subsequently assigned its interest to RAOP ("2019 Assignment"). The actual 2019 Assignment from OPV to RAG is longer and more detailed, while the immediately subsequent assignment from RAG to RAOP simply assigns "all rights, titles, interest and benefits of and to the Settlement Agreement and Release dated July 24, 2007 . . . to [RAOP] effective February 1, 2018, and dated July 9, 2019." For ease of reference, the Court generally addresses the assignments collectively as one agreement.

The 2019 Assignment states that it is retroactively effective beginning February 1, 2018, and states that OPV (formerly Overland Park Jeep) entered into the 2007 Agreement with Defendant so that it, its successors or assigns could relocate the Overland Park Jeep dealership for 15 years without protest from Defendant. According to the 2019 Assignment, the purpose of the 2017 APA was to permit RAG/RAOP to succeed Overland Park Jeep/OPV in the dealership located at 8775 Metcalf Avenue.[3] Finally, the 2019 Assignment states that the 2007 Agreement

---

[3]    As noted above, RAG immediately assigned its newly assigned interest in the 2007 Agreement to RAOP, which is the entity that actually operates the dealership.

"should have" been included in the 2017 APA as an "Assumed Contract" and that it was OPV's intent that RAG/RAOP be a successor-in-interest, assignee, or beneficiary to the 2007 Agreement.

On July 9, 2019, presumably immediately following the execution of the 2019 Assignment, Plaintiffs' counsel sent a letter to Defendant's counsel with a copy of the 2007 Agreement and demanded that Defendant dismiss its protest of RAOP's relocation. On July 12, 2019, after Defendant learned of the 2019 Assignment, it voluntarily dismissed its protest. After Defendant dismissed its protest, Plaintiffs made a demand for attorneys' fees under paragraph 11 of the 2007 Agreement based on Plaintiffs' costs in litigating the protest. Defendant refused to pay.

### D.      Lawsuit, Claims, and Damages

Plaintiffs now sue Defendant and assert four claims: (1) breach of contract; (2) breach of contract (third-party beneficiary); (3) violation of the Michigan Consumer Protection Act; and (4) malicious prosecution under Kansas law. Plaintiffs' damages in this lawsuit are attorneys' fees and expenses arising out of Defendant's protest and the enforcement of the 2007 Agreement.

The Pretrial Order lists the amount of attorneys' fees and expenses incurred between June 14, 2019, through October 5, 2020, for a total of $214,829.10. The attorneys' fees to date have been paid by RAG. Plaintiffs assert that, although RAG has paid the invoices, RAG has since invoiced RAOP for reimbursement of those amounts. Although Plaintiffs have produced an invoice from RAG to RAOP, it is unclear whether RAOP has paid those amounts.

## II.     STANDARD

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that

genuine issues remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In applying this standard, courts view the facts and any reasonable inferences in a light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmoving party." *Id.* (internal quotations omitted).

Where parties file cross-motions for summary judgment, each motion is viewed separately in a light most favorable to the non-moving party. *United States v. Sup. Ct. of N.M.*, 839 F.3d 888, 906-07 (10th Cir. 2016). The denial of one motion does not require the grant of the other. *Id.* at 907.

## III.    ANALYSIS

### A.    Breach of Contract – Counts I and II

The parties agree that the original parties to the 2007 Agreement were Overland Park Jeep, DaimlerChrysler, and Landers McLarty. *See* Doc. 75 at 3. The traditional rule is that only parties in privity of contract may sue to enforce an agreement. *Osprey-Troy Officentre L.L.C. v. World All. Fin. Corp.*, 822 F. Supp. 2d 700, 705 (E.D. Mich. 2011). Although Plaintiffs were not parties to the 2007 Agreement, they claim they are entitled to enforce it as Overland Park Jeep/OPV's successors, assigns, or third-party beneficiaries. Doc. 75 at 14. To this end, Plaintiffs' partial motion for summary judgment seeks judgment on the question of whether RAOP is Overland Park Jeep's successor and whether RAOP is a third-party beneficiary under the 2007 Agreement.[4]

Defendant argues it is entitled to summary judgment on Counts I and II for breach of contract because the contract is void against public policy and because Plaintiffs are not successors, assigns, or third-party beneficiaries.

---

[4]    Plaintiffs do not move on any other issues.

1. **Defendant has not preserved its argument that the 2007 Agreement violates public policy.**

The source of the dispute between the parties stems from paragraph 1 of the 2007 Agreement. That provision states that "Landers McLarty agrees not to protest or otherwise challenge any relocation or establishment of any DaimlerChrysler vehicle lines into the Overland Park Sales Area . . . for a period of fifteen (15) years from the date of the execution of this Agreement." Doc. 78-5 at 1. According to Defendant, all claims are based on that provision, and that provision is not enforceable because it is against public policy. Specifically, Defendant contends that this provision of the 2007 Agreement is contrary public policy because Kansas law authorizes dealers to file such protests and states that no person shall take action to prevent the exercise of rights under certain provisions of Kansas's Licensure of Vehicle Sales and Manufacture Act. *See* Doc. 78 at 20. Plaintiffs argue that this defense fails procedurally because it was not asserted in Defendant's answer or in the Pretrial Order.[5]

Although the parties debate whether Defendant's public-policy defense is an affirmative defense required to be pleaded in Defendant's answer under Rule 8, that debate is irrelevant at this stage because the Pretrial Order entered on November 17, 2020, "supersedes all pleadings and controls the subsequent course of this case." Doc. 75 at 1. Once entered, a pretrial order controls the dimensions of the case. *Koch v. Koch Indus., Inc.*, 179 F.R.D. 591, 596 (D. Kan. 1998). The purpose of a pretrial order is to "sharpen and simplify the issues for trial" and "insure the economical and efficient trial of every case on its merits without <u>chance or surprise</u>." *Id.* (internal quotations and citations omitted) (emphasis in original). It should reflect a complete picture of the

---

[5]   Plaintiffs also argue that the defense fails substantively. Because the Court finds Defendant waived the defense by not asserting it in the Pretrial Order, the Court does not reach the substantive arguments.

parties' contentions. *Id.* Issues not included can be excluded from the case within the court's discretion. *Id.*

Plaintiffs contend that Defendant did not raise this defense in the Pretrial Order, and it is therefore waived. Doc. 87 at 20. Defendant concedes that although it did not specifically assert the defense in the Pretrial Order, it did contend that the 2007 Agreement was "not valid or enforceable," which it argues is sufficient to preserve the defense. Doc. 91 at 12-13; *see also* Doc. 75 at 13 ("The Settlement Agreement is not a valid or enforceable contract."); *id.* at 16 (same); *id.* at 17 (same).

The Court disagrees that Defendant has preserved this defense. The purpose of the Pretrial Order is to narrow the issues and create a solid foundation to resolve the case. But Defendant's vague assertion that the 2007 Agreement "is not a valid or enforceable contract" is not specific enough to put Plaintiffs on notice that Defendant intended to assert a defense that one provision in the agreement, which is governed by Michigan law, is void as against Kansas public policy. This is especially true given that the Pretrial Order sets forth several other defenses that would also make the agreement invalid or not enforceable. *See* Doc. 75 at 16-17 (asserting that there was no offer, acceptance, consideration, meeting of the minds, and that Plaintiffs lack standing to enforce the contract). Further, Defendant's public-policy argument is not simply a factual subset of its claim that the 2007 Agreement is invalid and unenforceable—it is an entirely separate defense. *See 773, L.L.C. v. Scottsdale Ins. Co.*, 2012 WL 672366, at *6 (D. Kan. 2012) ("The Court will not permit a party to raise an entirely separate claim or defense than those asserted in the pretrial order, but it ordinarily will allow a party to raise a specific argument or factual contention which arguably is included within a general claim asserted in the pretrial order.").

Defendant gives no reason why it waited until summary judgment to raise this issue for the first time. The relevant statute hasn't changed. The 2007 Agreement is 14 years old at this point, and this case has been pending since 2019. There's no apparent reason why Defendant could not have enunciated this defense sooner, let alone in the Pretrial Order. Making this argument for the first time at this late stage runs counter to the purpose of a pretrial order. *See Koch*, 179 F.R.D. at 596 ( noting that a fulsome pretrial order "insure[s] the economical and efficient trial of every case on its merits without <u>chance or surprise</u>" (emphasis in original)). Accordingly, the Court exercises its discretion and finds that Defendant has waived its argument that paragraph 1 of the 2007 Agreement violates Kansas public policy.

### 2. A factual dispute exists regarding whether RAOP is a successor to OPV.

The core issue in this case is whether Plaintiffs have the right to sue under the 2007 Agreement, to which they were not originally a party. The 2007 Agreement contains a provision that states that it "shall inure to the benefit of and be binding on the successors, assigns, heirs, and legal representatives of the Parties to this Agreement." Doc. 78-5 at 4. Plaintiffs maintain they have standing to sue under the agreement as successors to Overland Park Jeep/OPV. Both parties move for summary judgment on this issue. *See* Doc. 78 at 27-28; Doc. 80 at 15-18.

On this issue, neither party presents particularly helpful analysis. Specifically, the parties cite to Black's Law Dictionary for the definition of "successor," which states that a successor is "[a] corporation that, through amalgamation, consolidation, or other assumption of interests, is vested with the rights and duties of an earlier corporation." Black's Law Dictionary (11th ed. 2019). Perhaps unsurprisingly, both rely on this definition but reach different results.

Plaintiffs argue they were OPV's successor because they obtained numerous assets from OPV, including inventory, the location, and other assets, and continued operating a car dealership

at the same location with nearly all of OPV's staff and management. They point to the 2017 APA, which states that "Purchaser [RAG, and subsequently RAOP] wishes to acquire substantially all of the assets of Seller [OPV] for the purpose of succeeding Seller [OPV] as the authorized Chrysler, Jeep, Dodge, and Ram dealer at the Dealership Location." Doc. 78-6 at 1.[6]

In contrast, Defendant argues that the 2017 APA only transferred certain assets and certain liabilities, and did not include any rights under 2007 Agreement.[7] Defendant also argues that Plaintiffs were not OPV's successors because, under the terms of the 2017 APA, RAOP could not automatically continue operating the business as a car dealership—it had to secure a sales and service agreement from the manufacturer, licensing and permits from the state, and floorplan financing from a third-party lending institution. And RAOP never conducted business as Overland Park Jeep and did not share any common officers or directors with Overland Park Jeep or OPV.

Although the Court is somewhat skeptical that an asset purchase agreement that transferred only some liabilities and assets is sufficient to create successor rights in all respects, including in an agreement that was not even transferred, the Court concludes that, on the current record, there

---

[6]  Plaintiffs also initially argue they should be considered successors under the "mere continuation" or "continuity of enterprise" rule. Doc. 80 at 17-18; Doc. 87 at 30; *but see* Doc. 92 at 30 (Plaintiffs' reply suggesting that they are not entitled to summary judgment under the "continuity of enterprise" doctrine). That rule is an exception to the "universally-accepted general rule [followed in Michigan] that a corporation that purchases the assets of another corporation does not, simply by virtue of the asset purchase transaction, become liable for the obligations of the seller." *City Mgmt. Corp. v. U.S. Chem. Co.*, 43 F.3d 244, 251 (6th Cir. 1994). Under the exception, where a company is a "mere continuation" of a previous entity, the new company may be subject to successor liability even where there is not common identity of ownership, so long as certain factors are met. *Id.* at 251-52; *see also* Doc. 87 at 30 (Plaintiffs' response brief listing factors). But the "mere continuation" exception is generally limited to products-liability cases. *See City Mgmt. Corp.*, 43 F.3d at 252. Although Plaintiffs vaguely suggest that this same standard also applies in determining a successor's rights (in addition to liabilities), they have not pointed the Court to any direct authority suggesting as much. Beyond this, and the citation to Black's Law Dictionary, neither party has helpfully analyzed what makes an entity a successor under a contract. The Court anticipates that this issue will be more clearly addressed at trial.

[7]  It is undisputed that the 2007 Agreement was not assigned to Plaintiffs by OPV at the time the 2017 APA was executed, although it was later. But whether the agreement was <u>assigned</u> is a separate issue from whether Plaintiffs are OPV's <u>successors</u>. The Court addresses assignment below.

is a disputed question of fact regarding whether Plaintiffs were OPV's successors. Accordingly, the Court denies both parties' motions on this issue.[8]

### 3. Defendant's protest was filed prior to the 2019 Assignment.

The 2007 Agreement also states it will "inure to the benefit and be binding on" the assigns of the parties. Doc. 78-5 at 4. Plaintiffs contend they are entitled to sue for breach of contract because OPV assigned its rights under the 2007 Agreement to Plaintiffs in July 2019. Doc. 87 at 34. Defendant moves for summary judgment on grounds that Plaintiffs had not been assigned any rights at the time it filed the protest. Doc. 78 at 23.

It is undisputed that, when OPV sold its assets to RAG (and subsequently RAOP), it did not assign its interest in the 2007 Agreement. *See* Doc. 78 at 7 (SOF 24 and 30, not controverted by Plaintiffs); *see also* Doc. 92 at 13 (Plaintiffs' reply brief stating: "The APA does not assign Overland Park Ventures' rights under the 2007 Settlement Agreement to Reed Auto."). It is also undisputed that Defendant filed its notice of protest on April 25, 2019. Doc. 78 at 9. Subsequently, on July 9, 2019, OPV executed the 2019 Assignment with RAG, which states that it "assigns, releases, remises, quit claims, and sets over all of its rights, titles, interest, and benefits of and to the" 2007 Agreement from OPV to RAG. Doc. 78-11 at 2.[9] That same day, RAG executed its own assignment of the agreement to RAOP. Doc. 78-12 at 1.

---

[8]   To be clear, the issue presented in the motions is whether Plaintiffs are OPV's successors, such that they could enforce the 2007 Agreement. If, at trial, Plaintiffs demonstrate that they are OPV's successors, they will still have to establish all the elements of a breach-of-contract claim. The parties' motions do not address that issue, and thus the Court does not address it at this stage either.

[9]   The 2019 Assignment purports to be retroactively effective as of February 1, 2018, and states that the parties intended it be included in the 2017 APA. Doc. 78-11 at 1-2. Although Defendant challenges the propriety of this, Plaintiffs do not rely on this feature of the 2019 Assignment; they only argue that the assignment was in place before the case was filed. Doc. 87 at 34-36. Accordingly, the Court does not determine the impact or propriety of the retroactive effective date. However, the Court notes that it is undisputed that the 2017 APA did not assign the 2007 Agreement at the time it was executed.

Defendant argues that Plaintiffs cannot enforce the contract as OPV's assigns because they were not assigns at the time <u>the protest</u> was filed. The Court agrees and finds Plaintiffs cannot sue for breach of contract where the alleged breach occurred before Plaintiffs had been assigned any rights under the contract. In other words, when Defendant filed its protest—the alleged breach of contract—Plaintiffs had not been assigned any rights under the contract. Accordingly, Plaintiffs' breach-of-contract claim did not exist and thus could not have been conveyed by OPV. *See WA Foote Mem'l Hosp. v. Farmers Ins. Exch.*, 2020 WL 814409, at *4 (Mich. Ct. App. 2020) (finding that an individual cannot assign rights she did not possess). Once those rights under the 2007 Agreement were assigned to Plaintiffs, Defendant immediately dismissed its protest. Plaintiffs' cause of action, insofar as they claim to be assigns under the 2007 Agreement, therefore is based entirely on actions that took place and damages that accrued at a time when Plaintiffs had no rights as assigns under the 2007 Agreement.

Plaintiffs contend they nevertheless obtained the assignment before the <u>case</u> was filed, and thus they are entitled to seek relief. But their reliance on *Cannon Township v. Rockford Public Schools* is misplaced. In that case, a homeowner sued a city and school district for damages from a sewer backup. After the city and the homeowner settled and the city's insurer paid the homeowner, both the homeowner and insurer assigned their rights to the city, who pursued further action against the school district. *Cannon Twp. v. Rockford Pub. Sch.*, 875 N.W.2d 242, 245-46 (Mich. Ct. App. 2015). The school district argued that the city was not the real party in interest because it had not paid anything or suffered any loss. *Id.* The court disagreed, noting the assignment by the homeowner and insurer. *Id.* at 246-47. The court noted that "an assignee of a cause of action becomes the real party in interest with respect to that cause of action, inasmuch as the assignment vests in the assignee all rights previously held by the assignor." *Id.* at 246-47.

*Cannon Township* is distinguishable because, at the time of the assignment in that case, the claim had already accrued in the assignors (the homeowners and the insurance company, who had a claim against the school district), and thus they were able to transfer that right to the city. Plaintiffs argue that this case stands for the proposition that "an assignee may pursue claims even if it did not obtain the assignment until after the lawsuit is filed." Doc. 87 at 35. But even if that is correct, it presupposes that the right assigned existed at the time of assignment—the missing factor here. Here, OPV had no claim to assign to Plaintiffs. The protest was directed at Plaintiffs, not OPV (which had already dissolved and was not an operating dealership), and the alleged resulting damages (stemming from litigating the protest) belonged to Plaintiffs, not OPV. Thus, OPV had no breach-of-contract claim based on Defendant's protest to assign. OPV could only assign its general rights under the 2007 Agreement. And once it did, Defendant promptly dropped the protest.

Accordingly, the Court finds that Plaintiffs cannot pursue a breach-of-contract claim as assigns because they had not been assigned any rights under the 2007 Agreement when the alleged breach occurred.

### 4. Plaintiffs are not intended third-party beneficiaries under the 2007 Agreement.

Plaintiffs alternatively argue that, if they were not successors or assigns to Overland Park Jeep/OPV's rights under the 2007 Agreement, they are third-party beneficiaries under that agreement. Doc. 75 at 14-15. The 2007 Agreement is governed by Michigan law, and in Michigan the rights of third-party beneficiaries are determined by statute. *Osprey-Troy Officentre*, 822 F. Supp. 2d at 705-06. That statute provides:

> Any person for whose benefit a promise is made by way of contract,
> as hereinafter defined, has the same right to enforce said promise

that he would have had if the said promise had been made directly to him as the promisee.

(1) A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise had undertaken to give or to do or refrain from doing something <u>directly to or for said person</u>.

Mich. Comp. Laws § 600.1405 (emphasis added). "Not everyone who benefits in some way from a contract can be considered a third-party beneficiary under this section, however." *Taggart v. United States*, 880 F.2d 867, 869 (6th Cir. 1989). Courts employ an objective standard to determine whether the promisor undertook to do or refrain from doing something directly to or for a third party. *Osprey-Troy Officentre*, 822 F. Supp. 2d at 706. The language of the contract is what governs, not the subjective intentions of the parties. *Taggart*, 880 F.2d at 869. Only <u>intended</u> beneficiaries can sue for a breach of contract; <u>incidental</u> beneficiaries cannot. *Osprey-Troy Officentre*, 822 F. Supp. 2d at 706. Whether a party is an intended third-party beneficiary is a question of law. *See id.* at 705.

As discussed above, the provision at issue states that "Landers McLarty agrees not to protest or otherwise challenge any relocation or establishment of any DaimlerChrysler vehicle lines into the Overland Park Sales Area . . . for a period of fifteen (15) years from the date of the execution of this Agreement." Doc. 78-5 at 1. An objective reading of this provision does not demonstrate that Defendant agreed to refrain doing something "directly to or for" Plaintiffs. The particular provision doesn't even contemplate any specific promisee, beyond perhaps DaimlerChrysler, who was actually a party to the 2007 Agreement.[10] It says nothing about RAOP

---

[10] Although Plaintiffs contend that RAOP is a "'DaimlerChrysler vehicle lines' dealer," Doc. 80 at 22, Plaintiffs have not disputed that RAOP never contracted with DaimlerChrysler to sell DaimlerChrysler vehicle lines, *see* Doc. 85 at 14. Plaintiffs have tried—somewhat unsuccessfully—to trace FCA US LLC, which it apparently does have a dealership agreement with, back to DaimlerChrysler. *See* Doc. 80 at 9-10 (statement of facts ¶¶ 20-28); Doc. 85 at 2-7 (controverting Plaintiffs' facts). The Court has reviewed these purported facts and the supporting documents. Some of the cited materials do not support Plaintiffs' claims, and at other times, Plaintiffs only cite voluminous exhibits generally without reference to a particular page. *See United States v. Lewis*, 594 F.3d 1270, 1275 (10th

or RAG. This is insufficient to give Plaintiffs third-party-beneficiary status. *Koenig v. City of S. Haven*, 597 N.W.2d 99, 104 (Mich. 1999) (explaining that the use the word "directly" in the statute "indicates the Legislature's intent to assure that contracting parties are clearly aware that the scope of their contractual undertakings encompasses a third party, directly referred to in the contract, before the third party is able to enforce the contract").

Plaintiffs contend that this provision represents a promise made to DaimlerChrysler dealers relocating in the Overland Park Sales Area, and RAOP falls within that class. Doc. 80 at 20; Doc. 87 at 33; *see also* supra note 9. But dealers or dealerships are not referenced in the paragraph, and thus there is no promise by Defendant to do or refrain from doing something directly for the benefit of that class. To be sure, other dealers of those vehicle lines might incidentally benefit from Defendant not protesting relocations or new dealerships. But such an incidental benefit is not enough to confer third-party-beneficiary status. *Osprey-Troy Officentre*, 822 F. Supp. 2d at 706; *Koenig*, 597 N.W.2d at 104 ("Simply stated, section 1405 does not empower just any person who benefits from a contract to enforce it.").

Also unpersuasive is Plaintiffs' reliance on *Taggart*. In that case, the agreement at issue released a specific class of parties, albeit unnamed parties, in the form of "any and all other persons, associations and corporations, whether herein named or referred to or not, and who together with the above named, may be jointly or severally liable to" the plaintiff. *Taggart*, 880 F.2d at 869. Although sweeping, that provision still applied to a definable class of parties—potentially liable

---

Cir. 2010) (noting "it is not this court's duty to scour without guidance a voluminous record for evidence"). Regardless, even if the vehicles lines currently sold by RAOP are the same as the DaimlerChrysler vehicle lines referenced in the 2007 Agreement, the Court still concludes that the plain language of that agreement does not reference any promise by Defendant to do or refrain from doing anything directly for the benefit of Plaintiffs, or for any other DaimlerChrysler dealer, for the reasons discussed in this order.

defendants. *Id.* at 869-70. By contrast, the language here does not reference any class of parties to which Plaintiffs belong.

Accordingly, the Court finds that Plaintiffs are not third-party beneficiaries to the 2007 Agreement. Defendant's motion is granted on this claim (Count II); Plaintiffs' motion is denied.

### 5. Plaintiffs have asserted damages.

Finally, Defendant argues that Plaintiffs have no damages, which is an essential element of a breach-of-contract claim. Doc. 78 at 28. Defendant points to the provision in the 2007 Agreement regarding attorneys' fees, which states: "In the event of any dispute arising under or concerning this Agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees and costs from the non-prevailing party in connection with any litigation regarding such dispute." Doc. 78-5 at 3. Defendant claims that Plaintiffs do not have any damages because they fail to meet the standard of this contractual provision and cannot claim damages from an administrative proceeding under a contractual provision. Defendant's argument misses the point.

Plaintiffs claim they are entitled to recover their attorneys' fees arising from the filing of the protest, as well as their fees and expenses incurred in enforcing the 2007 Agreement in this lawsuit. *See* Doc. 75 at 17; *see also* Doc. 87 at 37 ("[Plaintiffs] seek as damages attorney's fees from the Protest and this case."). But the damages incurred regarding the filing of the protest are not based on the administrative proceeding—they are based on the breach of the 2007 Agreement. In other words, it appears Plaintiffs claim damages in the form of attorneys' fees incurred in having to defend against the protest allegedly filed in breach of the 2007 Agreement, Doc. 87 at 37, and also attorneys' fees arising from enforcing that agreement in this lawsuit. Only the latter is

governed by the contractual provision, even though Plaintiffs' damages for breach of contract are also in the form of attorneys' fees. Accordingly, Plaintiffs have asserted a claim for damages.[11]

### C.    Michigan Consumer Protection Act – Count III

Plaintiffs' third claim is under the Michigan Consumer Protection Act ("MCPA"). The purpose of the MCPA is "to protect consumers in their purchases of goods which are primarily used for personal, family or household purposes." *Noggles v. Battle Creek Wrecking, Inc.*, 395 N.W.2d 322, 324 (Mich. Ct. App. 1986). Under the MCPA, "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful . . . ." Mich. Comp. Laws § 445.903(1). This includes "[c]ausing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction" if done "in the conduct of trade or commerce." *Id.* at § 445.903(1)(n). "'Trade or commerce' means the conduct of a business providing goods, property, or service primarily for personal, family, or household purposes . . . ." Mich. Comp. Laws § 445.902(1)(g).

According to Plaintiffs, Defendant's filing of the protest and not disclosing the existence of the 2007 Agreement "caused confusion as to the rights and obligations of Plaintiffs and [Defendant] related to the relocation." Doc. 75 at 15. Defendant moves for summary judgment on this claim based on several arguments, including that the MCPA does not extend to Plaintiffs' claim because the MCPA applies to the conduct of business providing goods or services to

---

[11] Defendant also argues that RAOP does not have any damages because RAG has paid all the attorneys' fees and expenses to date. Doc. 78 at 14, 32. In response, however, Plaintiffs have submitted an invoice from RAG to RAOP for the fees initially paid by RAG. Doc. 87 at 13; *see also* 87-5 at 2. Defendant complains that the invoice is not attached to any affidavit. But even without an affidavit, the Court is not convinced the substance of this evidence could not be presented in an admissible form at trial. *See Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1210 (10th Cir. 2010). Defendant also claims, without support, that it is "a self-serving, fabricated invoice in an effort to demonstrate that Plaintiff RAOP has been damaged," that there is no evidence that RAOP ever paid the invoice, and that there is other evidence that RAG is the entity that paid the fees. Doc. 91 at 3. To the extent the invoice was not properly disclosed in discovery, Defendant is entitled to pursue whatever relief it deems necessary prior to trial. But based on the current record, the issue of damages presents a disputed issue of fact. As discussed below, RAG has no viable claims in this case, and thus RAOP will have to establish at trial that it incurred damages.

consumers for personal, family, and household purposes, which is not at issue in the parties' underlying dispute about the dealership-relocation protest.[12] The Court agrees.

The Michigan Supreme Court has stated that "the MCPA applies only to purchases by consumers and does not apply to purchases that are primarily for business purposes." *Slobin v. Henry Ford Health Care*, 666 N.W.2d 632, 634 (Mich. 2003). Here, the action complained of is Defendant's filing of the administrative protest to RAOP's dealership relocation request allegedly in breach of the 2007 Agreement. The protest served no personal, family, or household purpose and thus it was not done in the conduct of trade or commerce, as that term is defined under the MCPA. *See* Mich. Comp. Laws § 445.902(1)(g).[13] Rather, it was for "precisely the business or commercial purpose that is outside the express contemplation of the MCPA." *Slobin*, 666 N.W.2d at 635.

Plaintiffs argue that both they and Defendant are in the business of selling cars to consumers, and that they are therefore permitted to sue under the MCPA. Doc. 87 at 42-43 (citing *Innovation Ventures, LLC v. N2G Distrib., Inc.*, 779 F. Supp. 2d 671, 681 (E.D. Mich. 2011)). But in *Innovation Ventures, LLC*, the conduct at issue was a business sending letters and advertisements about a competing product, which was within the MCPA's definition of "trade and commerce." *See Innovation Ventures, LLC*, 779 F. Supp. 2d at 681 (noting that "trade and commerce" includes "conduct of a business providing goods, property, or service primarily for personal, family, or household purposes and includes . . . advertising . . . ." (quoting Mich. Comp. Laws § 445.902(1)(g))); *see also John Labatt Ltd. v. Molson Breweries*, 853 F. Supp. 965, 966

---

[12]   Because the Court finds this issue dispositive of Plaintiffs' MCPA claim, it does not reach Defendant's other arguments.

[13]   In light of the holding on the MCPA claim, the Court will assume without deciding whether the filing of a protest constitutes a "transaction" under Mich. Comp. Law § 445.903(1)(n).

(E.D. Mich. 1994) (involving the marketing of a competing consumer product). But here, the conduct at issue is the protest, and the only link to consumer goods is that the parties sell cars. The Michigan Supreme Court has rejected such a distant connection to "personal, family, or household" consumer use. *See Slobin*, 666 N.W.2d at 635 ("While there will sometimes be a fine line between activities within the scope of the MCPA and those beyond its coverage, we believe that the activities in question here are too indirectly related to plaintiff's 'personal, family, or household' use to fall within the act."). Accordingly, Defendant is entitled to summary judgment on this claim.

### D.      Malicious Prosecution – Count IV

Plaintiffs' fourth claim is for malicious prosecution under Kansas law. To establish a malicious-prosecution claim, a "plaintiff must prove: (1) the defendant initiated, continued, or procured the proceeding of which the complaint is made; (2) the defendant in doing so acted without probable cause; (3) the defendant acted with malice; (4) the proceedings terminated in favor of plaintiff; and (5) plaintiff sustained damages." *Good v. Bd. of Cnty. Comm'rs of Cnty. of Shawnee, Kan.*, 331 F. Supp. 2d 1315, 1328 (D. Kan. 2004). Probable cause is judged from "the facts and circumstances as they appeared to [the defendant] when the action was commenced." *Holick v. Burkhart*, 388 F. Supp. 3d 1370, 1382 (D. Kan. 2019). It exists where a party "reasonably believes in the existence of the facts upon which the claim is based" and "correctly or reasonably believes that under those facts the claim may be valid under the applicable law." *Id.* (quoting Restatement (Second) of Torts § 675). Malice in this context means a defendant "acted primarily for a purpose other than that of securing the proper adjudication of the claim upon which the proceedings are based." *Id.* at 1379.

Defendant moves for summary judgment on this claim on grounds that it was justified in filing its protest and did not act with malice in doing so. Defendant does not dispute (or even address) that the filing of the protest can be the basis of a malicious-prosecution claim in Kansas, that the protest terminated in Plaintiffs' favor, or that Plaintiffs were damaged by the protest being filed.[14] But Defendant contends it acted with probable cause in filing the protest based on 25 purported facts it believed when it filed its protest. Doc. 78 at 9-12, 39-41.[15] Defendant also summarily asserts, without support, that it acted without malice. *Id.* at 41.

Plaintiffs dispute this, arguing that Defendant's immediate dismissal of the protest after Plaintiffs presented it with the 2007 Agreement contradicts Defendant's statements that they believed they had a right to file the protest. Plaintiffs also cite an email from Defendant's general manager discussing how delays from a protest would make it impossible for RAOP "to be out of their property by May 2020 and that is the real leverage we have here," noting that "the penalties for not being off that property would cripple the store" and that "[t]hey cannot afford any delays and Chrysler knows it and now so do you." Doc. 87-2 at 2; Doc. 87 at 12.[16]

Based on this, the Court finds a genuine issue of material fact exists regarding whether the protest was filed without probable cause and with malice. Accordingly, the Court denies Defendant's motion as to Count IV.

---

[14] Defendant does argue that Plaintiffs have not sustained damages for purposes of their breach-of-contract claims. Doc. 78 at 28-32. But they do not specifically dispute that Plaintiffs sustained damages for purposes of the malicious-prosecution claim.

[15] These facts include that both Defendant and RAOP were new-car dealers selling Chrysler, Dodge, Jeep, and Ram vehicles and that relocation of RAOP would be detrimental to Defendant because it would lose business to RAOP at its proposed more profitable location. Defendant also contends it believed relocation of RAOP would be detrimental to the public and that Defendant was entitled to protest under Kansas law and that the 2007 Agreement was no longer enforceable. Doc. 78 at 9-12.

[16] Defendant claims to have reasonably believed when it filed its protest on April 25, 2019, that the denial of the relocation application would likely not have any detrimental impact on RAOP. Doc. 78 at 11. The email, which intimated that delays from the protest could "cripple the store," was sent April 10, 2019. Doc. 87-2 at 2.

E.     Claims by RAG

Plaintiffs RAOP and RAG apparently collectively assert all the claims in this case. Defendant moves for summary judgment as to all claims asserted by RAG on grounds that it has no viable claims in this case. As discussed above, the Court has concluded Defendant is entitled to summary judgment on the breach-of-contract claims under an assignment and third-party-beneficiary theory, and on the MCPA claim. Thus, the remaining issue is whether RAG has a viable claim for breach of contract as a successor to OPV or for malicious prosecution. The Court finds that RAG has no right to relief under either theory.

As to the surviving breach-of-contract claim, the Court has found a genuine issue of fact as to whether RAOP is a successor to Overland Park Jeep/OPV. However, it is undisputed that RAG assigned all of the rights, title, and interest it acquired under the 2017 APA to RAOP. Thus, if the 2017 APA created a successor to Overland Park Jeep/OPV—an issue for trial—that successor would have to be RAOP, not RAG.

As to the malicious-prosecution claim, it is undisputed that RAG is not a vehicle dealer subject to Kansas's Licensure of Vehicle Sales and Manufacture Act and does not conduct business as a vehicle dealership. It is also undisputed that RAG never filed a relocation request, and the protest filed by Defendant was directed at the relocation of the dealership owned and operated by RAOP. Defendant did not file any protest applicable to RAG. *See* Doc. 78 at 3, 9 (uncontroverted statements of fact 5-6, 36-38). Because the malicious-prosecution claim is based on the protest, Defendant has never "initiated, continued, or procured the proceeding of which the complaint is made" as to RAG. *See Good*, 331 F. Supp. 2d at 1328.

Accordingly, the Court finds that Defendant is entitled to summary judgment on all remaining claims to the extent they are asserted by RAG. The remaining claims by RAOP (breach of contract based on successorship and malicious prosecution) survive for trial.

## IV.    CONCLUSION

THE COURT THEREFORE ORDERS that Defendant's Motion for Summary Judgment (Doc. 77) is GRANTED IN PART AND DENIED IN PART. Defendant's motion is granted as to Plaintiffs' breach-of-contract claim based on assignment (Count I, in part), breach-of-contract claim as a third-party beneficiary (Count II), and MCPA claim (Count III). Defendant's motion is denied as to the breach-of-contract claim by RAOP as a purported successor (Count I, in part) and RAOP's malicious-prosecution claim (Count IV). Defendant's motion is granted to the extent these surviving claims are asserted by RAG.

THE COURT FURTHER ORDERS that Plaintiffs' Motion for Partial Summary Judgment (Doc. 80) is DENIED.

IT IS SO ORDERED.

Dated: March 26, 2021                          */s/ Holly L. Teeter*
                                               HOLLY L. TEETER
                                               UNITED STATES DISTRICT JUDGE