IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

REED AUTO OF OVERLAND PARK, LLC,

Plaintiff,

v.

LANDERS MCLARTY OLATHE KS, LLC,

Defendant.

Case No. 2:19-cv-02510-HLT

**MEMORANDUM AND ORDER**

This is a dispute between two competing car dealerships, Plaintiff Reed Auto of Overland Park and Defendant Landers McLarty. Plaintiff alleges that Defendant breached a contract Defendant entered in 2007 with another dealership who later sold its assets to Plaintiff. Part of that agreement was a promise by Defendant not to protest the relocation of certain vehicle lines in the Overland Park area for 15 years. Approximately 12 years into that agreement, Defendant filed a protest against Plaintiff's proposed dealership relocation. Plaintiff sued, asserting various claims.[1] After the parties filed cross motions for summary judgment, the Court dismissed all claims except a breach-of-contract claim by Plaintiff as a purported successor under the 2007 contract and a malicious-prosecution claim. Doc. 96 at 24.

Defendant now moves to alter or amend the Court's ruling under Federal Rule of Civil Procedure 59(e). Doc 98. Defendant seeks dismissal of the two remaining claims on grounds that Michigan law precludes enforcement of the 2007 contract because it is against public policy. The

---

[1] There were originally two Plaintiffs. But the Court dismissed all claims asserted by Plaintiff Reed Auto Group.

Court previously held that Defendant failed to preserve that defense. Doc. 96 at 9-11. For the reasons stated below, the Court denies Defendant's motion.

I. **BACKGROUND**

The facts of this dispute are laid out in detail in the Court's prior order. Doc. 96 at 2-7. Highly summarized, both parties are competing vehicle dealerships in Kansas. In 2007, Defendant entered a contract with DaimlerChrysler and Overland Park Jeep. Paragraph 1 of that contract states:

> 1. <u>NO FUTURE PROTEST</u>. Landers McLarty agrees not to protest or otherwise challenge any relocation or establishment of any DaimlerChrysler vehicle lines into the Overland Park Sales Area, as defined in Attachment 1 hereto for a period of fifteen (15) years from the date of the execution of this Agreement.

In 2017, Plaintiff entered into an Asset Purchase Agreement with Overland Park Jeep/Overland Park Ventures.[2] The extent of Plaintiff's rights under the 2007 contract as an alleged successor to Overland Park Jeep/Overland Park Ventures—and thus Plaintiff's ability to enforce the 2007 contract—remains an issue for trial.

In 2019, Plaintiff sought to relocate its dealership. Defendant filed a Notice of Protest under K.S.A. § 8-2430 contesting the relocation. After Overland Park Jeep/Overland Park Ventures informed Plaintiff about the 2007 contract, Plaintiff brought it to Defendant's attention, and Defendant voluntarily dismissed its protest. After Defendant dismissed its protest, Plaintiff made a demand for attorneys' fees under the 2007 contract based on Plaintiff's costs in litigating the protest. Defendant refused to pay. This litigation ensued.

Plaintiff alleged breach of contract as a successor, assign, and third-party beneficiary under the 2007 contract; violation of the Michigan Consumer Protection Act; and malicious prosecution

---

[2] By the time of the sale, Overland Park Jeep had changed its business name to Overland Park Ventures.

under Kansas law. The Court dismissed all claims except Plaintiff's breach-of-contract claim based on successor rights and Plaintiff's malicious-prosecution claim. Doc. 96 at 24. The Court also found Defendant waived its argument that the contract was unenforceable because it was against public policy because Defendant didn't include it as a defense in the Pretrial Order. *Id.* at 9-11. Defendant now seeks reconsideration of that ruling, arguing that the Court should have considered its public policy argument on its own initiative, and that substantive consideration of that defense requires judgment in Defendant's favor on the remaining claims.

## II. STANDARD

A motion to alter or amend a judgment under Rule 59(e) is essentially a motion for reconsideration. *Pound v. Airosol Co.*, 368 F. Supp. 2d 1158, 1159 (D. Kan. 2004). Typically, grounds for reconsideration are "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Id.* (quoting *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)). A motion for reconsideration may be appropriate if a court has misunderstood the facts, argument, or controlling law. *Servants*, 204 F.3d at 1012. But "a party cannot invoke Rule 59(e) to raise arguments or present evidence that should have been set forth in the first instance or to rehash arguments previously considered and rejected by the court." *Pound*, 368 F. Supp. 2d at 1159. "Whether to grant or deny a Rule 59(e) motion is within the district court's sound discretion." *Id.*

## III. ANALYSIS

Defendant moves to alter or amend the Court's summary-judgment ruling on the issue of whether Defendant waived its argument that the 2007 contract is void because it is against public policy. As stated above, the Court previously held that Defendant failed to preserve the defense by not including it in the Pretrial Order. Doc. 96 at 9-11.

### A. Defendant's motion improperly attempts to rehash arguments previously considered.

First, the Court finds that Defendant's motion largely retreads the same ground covered in the summary-judgment briefing. In addition to the 28 pages of briefing by Defendant on the instant motion, Defendant dedicated approximately 23 pages to this issue during summary judgment. Yet other than reciting the standard of review for Rule 59(e) motions, Defendant mostly just rehashes the same substantive arguments[3] instead of explaining how the Court's prior ruling was clear error, assuming that is what Defendant contends.[4] This is not a proper use of a Rule 59(e) motion. *Servants*, 204 F.3d at 1012 ("It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing."). The Court will not reconsider its prior order based only on a rehashing of the same arguments. *See Pound*, 368 F. Supp. 2d at 1159. The Court denies the motion.

### B. Defendant has not demonstrated that the Court's prior ruling regarding waiver was clear error.

Second, even if reconsidered, the Court finds that Defendant has not demonstrated that the prior ruling regarding waiver was clear error. Generally, Defendant's motion ignores the Court's prior ruling altogether. The Court previously found that Defendant had failed to preserve its argument that the contract was contrary to public policy because Defendant did not include the defense in the Pretrial Order. Doc. 96 at 9-11. The Pretrial Order supersedes all pleadings and controls the case going forward. *See Koch v. Koch Indus., Inc.*, 179 F.R.D. 591, 596 (D. Kan. 1998).[5]

---

[3] Indeed, Defendant's motion to alter or amend repeats arguments from summary-judgment briefing nearly verbatim.

[4] Defendant does not suggest an intervening change in law or the discovery of new evidence.

[5] The Court's ruling focused on whether the defense was asserted in the Pretrial Order because that is the document that governs the case at this stage. But there is no indication that Defendant raised this defense before the issuance of the Pretrial Order either.

In the motion to alter or amend, Defendant argues that the Court was required to consider on its own initiative whether the 2007 contract, which is governed by Michigan law, is void because it is in conflict with a Kansas statute. In support, Defendant relies on a 1938 Michigan Supreme Court case, *Meek v. Wilson*. There, the Michigan Supreme Court stated that "[t]he court will take notice of illegal contracts on its own motion and refuse to enforce them." *Meek v. Wilson*, 278 N.W. 731, 736 (Mich. 1938). But Plaintiff contends that whether a defense is waived—as the Court found it was in this case—is governed by federal law, not Michigan law.

"In a diversity action, state law controls the nature of a defense . . . but federal rules govern the manner and time the defense is raised, and waiver of the defense." *Crane Const. Co. v. Klaus Masonry*, 71 F. Supp. 2d 1138, 1141 (D. Kan. 1999). To this point, the Tenth Circuit has held that illegality of a contract must be affirmatively pleaded. *Sky Harbor Air Serv., Inc. v. Reams*, 491 F. App'x 875, 883-84 (10th Cir. 2012); *see also* Fed. R. Civ. P. 8(c)(1) (stating that illegality is an affirmative defense that must be pleaded).[6] The Tenth Circuit has also noted that the fact that courts typically will not enforce illegal contracts does not address when such defenses must be raised. *Sky Harbor*, 49 F. App'x at 884. The Sixth Circuit has likewise stated that illegality can be waived if not pleaded while limiting *Meek* to the proposition "that <u>if illegality is apparent from either the face of the contract or the evidence</u>, a party may raise the defense for the first time at any point

---

[6] The parties alternatively refer to the contract being both void as against public policy and illegal. This is largely a distinction without a difference as it applies here, as the argument is that the 2007 contract is void against public policy because it is prohibited by a Kansas statute. Public policy is often determined by considering statutes. *See Terrien v. Zwit*, 648 N.W.2d 602, 608 (Mich. 2002) ("In identifying the boundaries of public policy, we believe that the focus of the judiciary must ultimately be upon the policies that, in fact, have been adopted by the public through our various legal processes, and are reflected in our state and federal constitutions, our statutes, and the common law."); *Morris & Doherty, P.C. v. Lockwood*, 672 N.W.2d 884, 893 (Mich. Ct. App. 2003) (noting that "public policy" is determined by looking at constitutions, statutes, common law, regulations, administrative rules, and rules of professional conduct); *see also Sky Harbor*, 49 F. App'x at 883 n. 11 (discussing an illegality defense based a failure to comply with federal statutes and regulations).

during litigation, even on appeal." *Ordos City Hawtai Autobody Co. v. Dimond Rigging Co., LLC*, 695 F. App'x 864, 872 (6th Cir. 2017) (emphasis added).

Defendant "recognizes that the Federal Rules of Civil Procedure dictates the procedural aspects associated with the litigation process," but still contends that Michigan law precludes the enforcement of a contract that is against public policy. Doc. 104 at 1-2. But while it may be true that Michigan law substantively offers a defense, as stated above, federal law controls when defenses must be raised and when they are waived. This was what the Court held when it found Defendant had failed to preserve the defense by not including it in the Pretrial Order. Doc. 96 at 9-11. Defendant largely ignores this and reiterates its substantive illegality defense. Defendant's failure to meaningfully address the Court's procedural ruling does not demonstrate that the Court's decision regarding waiver was clear error.

### C. Defendant has not demonstrated that the 2007 contract is illegal under Kansas law.

Third, even if the Court were to reconsider its waiver ruling and consider this defense substantively, it would conclude that Defendant has not demonstrated that the contract is illegal or void against public policy. Courts will generally enforce contracts entered into by parties "absent some <u>highly unusual</u> circumstance, such as a contract in violation of law or public policy." *Wilkie v. Auto-Owners Ins. Co.*, 664 N.W.2d 776, 782 (Mich. 2003) (emphasis added).

Defendant relies on various provisions in the Kansas Licensure of Vehicle Sales and Manufacture Act (the "Act").[7] First, it points to K.S.A. § 8-2402. That provision states that it is "the public policy of this state to provide for fair and impartial regulation of those persons engaged in manufacturing, distributing or selling of vehicles" and that the provisions of the Act should be

---

[7] Neither party addresses whether a contract governed by the substantive law of Michigan can be void under Michigan law because it violates a statutory provision under Kansas law. Because the Court finds the 2007 contract does not violate any Kansas statute, it will assume without deciding that such an argument is proper.

administered "to promote fair dealing and honesty in the vehicle industry and among those engaged therein without unfair or unreasonable discrimination or undue preference or advantage." But a general statement of public policy does not demonstrate that Defendant's agreement to not file future protests is illegal, or even that the promise runs counter to the purpose of the Act. Parties retain a general right to enter into contracts and can waive their statutory rights. *Morris & Doherty*, 672 N.W.2d at 893 (stating that parties generally have the "utmost liberty" to enter into contracts (quoting *Terrien*, 648 N.W.2d at 611)); *In re Receivership of 11910 S. Francis Rd. (Price v. Kosmalski)*, 821 N.W.2d 503, 514 (Mich. 2012) ("Certainly, a party can waive its statutory rights."); *Hunt Constr. Grp., Inc. v. Constr. Servs., Inc.*, 375 F. Supp. 2d 612, 616 (E.D. Mich. 2005) ("Michigan law permits a party to waive a specific right through a contract."). If such a generalized statement of public policy in a statute could void any contract touching on the subject matter of the statute, nearly all contracts could likely be voided. Notably, Defendant does not suggest any unfair or undue influence caused it to enter into the 2007 contract. To the contrary, Defendant plainly acknowledges that it agreed to not protest future relocations for 15 years. Doc. 98 at 11. To allow it to simply abandon that promise now when it no longer suits Defendant would seem to disserve the Act's goal that its provisions be administered "to promote fair dealing and honesty in the vehicle industry." *See* K.S.A. § 8-2402.[8]

Defendant also cites K.S.A. § 8-2430(c), which provides that an existing vehicle dealer "shall have standing to protest" the relocation of a new dealer. But the fact that Defendant has <u>standing</u> to protest Plaintiff's relocation does not mean Defendant's promise not to do so violates the statute or public policy, as parties are entitled to waive statutory rights via contract. *See Morris*

---

[8] As the Court previously found, it remains to be determined whether Plaintiff is a proper party to enforce this agreement.

*& Doherty*, 672 N.W.2d at 893; *In re Receivership of 11910 S. Francis Rd.*, 821 N.W.2d at 514; *Hunt*, 375 F. Supp. 2d at 616. Likewise, the Michigan Supreme Court has stated that even though something is "permitted by law does not indicate that private covenants barring such business activity are contrary to public policy." *Terrien*, 648 N.W.2d at 609. Applying that here, just because Defendant may protest a relocation under Kansas law does not mean that its agreement to not do so violates public policy.

Finally, Defendant cites K.S.A. § 8-2430(f), which states that "[n]o person, entity, licensee or their agents or employees, shall require the relocation, cancellation or termination of an existing dealer or otherwise take any action to penalize any dealer who exercises the rights provided under this section, or undertake such action for the purpose of preventing or avoiding the exercise by a dealer of the rights provided under this section." Clearly, this provision limits what can be required or what action can be taken against a dealer who rightfully exercises protest rights. But the 2007 contract doesn't reflect any "action for the purpose of preventing or avoiding the exercise by a dealer of the rights provided under this section." The contract simply reflects a <u>waiver</u> by Defendant of the right to protest in certain circumstances. Nothing in the statute speaks to that issue. The statute certainly does not state that a party's <u>waiver</u> of the right to protest is prohibited.

That is the key distinction between this case and the cases relied on by Defendant. Those two cases—from New Hampshire and Florida state courts—addressed state statutes that specifically prohibited waiver of the rights at issue. In *Strike Four, LLC v. Nissan N. Am., Inc.*, the state statute offered procedural protections to dealers "<u>[n]otwithstanding the terms, provisions, or conditions of any agreement or franchise, and notwithstanding the terms or provision to any waiver</u>." 64 A.3d 936, 941 (N.H. 2013) (emphasis in original). And under that statute, "[a]ll written or oral agreements of any type between a manufacturer or distributor and a motor vehicle dealer"

were subject to those procedural protections. *Id.* at 942. The court found that "[s]uch broad language, in a remedial statute, precludes parties from contracting around the mandatory pre-discontinuance procedures set forth by statute." *Id.* at 947.[9] Likewise, in *Bayview Buick-GMC Truck, Inc. v. Gen. Motors Corp.*, a dealer entered into an agreement with a manufacturer that gave the manufacturer the right of first refusal upon sale of the dealership. 597 So. 2d 887, 888-89 (Fla. Dist. Ct. App. 1992). But state law provided that a manufacturer could not object to an asset sale so long as certain conditions were met. *Id.* at 890. The right-of-first refusal provision was deemed void because state law "clearly restricts the use of any term in a franchise agreement to circumvent or evade the statutory procedures." *Id.*

But here, there is no comparable provision in the statutes relied on by Defendant that <u>prohibits</u> a party from <u>waiving</u> its statutory right to protest dealer relocations, as Defendant did. This is fatal to Defendant's public-policy defense, as the Court cannot simply void a contract absent some clear evidence that it violates the law. *See Terrien*, 648 N.W.2d at 609-10 ("To fail to recognize this distinction would accord the judiciary the power to examine the wisdom of private contracts in order to enforce only those contracts it deems prudent."). Defendant argues that the second sentence in K.S.A. § 8-2430(f) "specifically precludes any agreement from containing a provision that avoids or circumvents the requirements of the Act." Doc. 104 at 9. But what that provision actually says is that "[n]o <u>franchise agreement</u> made, entered or renewed after the effective date of this act shall contain provisions which avoid or circumvent the requirements of this act." K.S.A. § 8-2430(f). "Franchise agreement" under the Act is defined as:

> (w) "Franchise agreement" means any contract or franchise or any
> other terminology used to describe the contractual relationship

---

[9] As Plaintiff notes, other parts of the Act not relating to dealer protests include similar language regarding franchise terminations, but not in the section of the Act regarding dealer protests relied on by Defendant. *See, e.g.*, K.S.A. § 8-2414(e)(2) (stating that "notwithstanding any agreement," certain facts cannot constitute good cause for the termination of a franchise agreement).

> between first or second stage manufacturers, distributors and vehicle dealers, by which:
>
>> (1) A right is granted one party to engage in the business of offering, selling or otherwise distributing goods or services under a marketing plan or system prescribed in substantial part by the other party, and in which there is a community of interest in the marketing of goods or services at wholesale or retail, by lease, agreement or otherwise; and
>
>> (2) the operation of the grantee's business pursuant to such agreement is substantially associated with the grantor's trademark, service mark, trade name, logotype, advertising or other commercial symbol designating the grantor or an affiliate of the grantor.

K.S.A. § 8-2401(w).[10] Defendant makes no effort to demonstrate that the 2007 contract, which was a settlement agreement,[11] meets this definition of "franchise agreement," other than making the somewhat specious assertion that a "franchise agreement" is simply "any contract" under this definition. Doc. 98 at 10. But it clearly is not. The term "any contract" is followed by two paragraphs of modifiers. And the fact that the Act regulates franchise agreements, *see Hartford Cas. Ins. Co. v. Credit Union 1 of Kan.*, 992 P.2d 800, 805 (Kan. 1999) ("[T]he Act provides not only for the regulation of dealers as sellers of vehicles but also regulates franchising agreement between dealers and manufacturers and distributors."), does not mean that the Act equally targets "any contract" entered into by a dealer. Accordingly, even if the Court had grounds to reconsider its ruling and found Defendant had not waived this argument, the Court would still find Defendant failed to establish that its waiver of its protest rights violates Kansas law.

---

[10] Defendant also makes passing reference to K.S.A. § 8-2437(a). But that provision also refers to "franchise agreements." Likewise, to the extent that provision states that any "licensee" agrees to be bound by the Act "in all respects," that does not speak to the issue of whether Defendant could waive its rights under the Act.

[11] The 2007 contract is titled "Settlement Agreement and Release" and was aimed at resolving a dispute between Defendant and another dealer regarding Defendant's proposed combination of its dealerships, which the other dealer protested. *See* Doc. 80-4 at 2; *see also* Doc. 96 at 2-3.

The Court finally notes that Defendant goes to great lengths opining on the sanctity of its protest of Plaintiff's dealer relocation, how essential dealer protests are, and how they serve public interest. While the Court does not question the role dealerships play in regulating motor-vehicle sales in Kansas, Defendant's argument is difficult to reconcile with the fact that Defendant entered into the contract in 2007, knowingly waived its right to protest despite very likely being aware of the terms of the Act, lived with that promise apparently undisturbed for 12 years until it filed a protest, withdrew that protest almost immediately after Plaintiff discovered the existence of the 2007 contract, and then waited nearly two more years to first broach the issue of illegality during summary-judgment briefing. Nor does the Court discern any overriding public policy interest served by preventing enforcement of Defendant's arm's length promise, to the extent Plaintiff is and appropriate party to enforce the contract. *See Wilkie*, 664 N.W.2d at 782 ("The notion, that free men and women may reach agreements regarding their affairs without government interference and that courts will enforce those agreements, is ancient and irrefutable."); *Terrien*, 648 N.W.2d at 610 ("[A]bsent some specific basis for finding them unlawful, courts cannot disregard private contracts and covenants in order to advance a particular social good.").

## IV.　CONCLUSION

THE COURT THEREFORE ORDERS that Defendant's Motion to Alter or Amend Judgment (Doc. 98) is DENIED.

IT IS SO ORDERED.

<u>Dated: July 1, 2021</u>　　　　　　　/s/ *Holly L. Teeter*
　　　　　　　　　　　　　　　　　　HOLLY L. TEETER
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE